**MDL 1838**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 5 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTI-DISTRICT LITIGATION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE: TJX COMPANIES, INC.  RETAIL | ) | MDL Docket No. _____ |
| SECURITY BREACH  LITIGATION | ) | |
| | ) | |
| | ) | |

**MOTION OF PLAINTIFFS JULIE BUCKLEY, RACHEL ROSENFELD, KIMBERLY MYCK-RAWSON AND JITKA PARMET PURSUANT TO 28 U.S.C. §1407 FOR TRANSFER AND CENTRALIZATION OF ALL RETAIL SECURITY BREACH LITIGATION IN THE DISTRICT OF MASSACHUSETTS**

Pursuant to 28 U.S.C. Section § 1407, Plaintiffs Julie Buckley, Rachel Rosenfeld,

Kimberly Myck-Rawson, and Jitka Parmet (collectively "Plaintiffs") hereby move this Panel to

transfer six interrelated class actions, currently pending in three different federal district courts,

for coordinated pretrial proceedings in the United States District Court for the District of

Massachusetts.[1]  The grounds in support of Plaintiffs' motion are set forth in the accompanying

memorandum of law.

---

[1]Pursuant to Panel Rule 7.2(a), a list of the actions that Plaintiffs seek to transfer to a single district for pretrial proceedings is attached to this Motion as "Schedule 1."  Plaintiffs also intend to designate subsequently removed actions, as well as any subsequently filed federal actions not listed in Schedule 1, as potential "tag alongs" pursuant to Panel Rules 7.4 and 7.5.

Doc. 156094

**OFFICIAL FILE COPY**

**IMAGED** FEB 1 5 2007

Dated: February 8, 2007

Respectfully Submitted,

Wolf Popper LLP

By: _Danielle Disporto_
Lester L. Levy
Emily Madoff
Danielle Disporto
845 Third Avenue
New York, NY 10022
(212) 759-4600

Shapiro Haber & Urmy LLP
Thomas G. Shapiro
 Robert E. Ditzion
53 State Street
Boston, MA 02109
(617) 439-3939

*Counsel for Plaintiffs Julie Buckley, Rachel
Rosenfeld, Kimberly Myck-Rawson, and
Jitka Parmet*



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 5 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTI-DISTRICT LITIGATION

|  |  |
|---|---|
| ) | |
| ) | |
| IN RE: TJX COMPANIES, INC.  RETAIL  ) | MDL Docket No. _____ |
| SECURITY BREACH  LITIGATION      ) | |
| ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFFS JULIE
BUCKLEY, RACHEL ROSENFELD, KIMBERLY MYCK-RAWSON AND JITKA
PARMET PURSUANT TO 28 U.S.C. §1407 FOR TRANSFER AND CENTRALIZATION
OF ALL RETAIL SECURITY BREACH LITIGATION IN THE DISTRICT OF
MASSACHUSETTS**

**I.      INTRODUCTION**

Plaintiffs Julie Buckley, Rachel Rosenfeld, Kimberly Myck-Rawson, and Jitka Parmet

(collectively "Plaintiffs") respectfully request that this Panel transfer duplicative lawsuits that

have been filed against TJX Companies Inc. and others to a single district for coordinated

proceedings.  As of February 7, 2007, Defendants TJX Companies, Inc. ("TJX"), TJ Maxx (one

of TJX's retail stores), Fifth Third Bancorp and Fifth Third Bank (one of Fifth Third Bancorp's

banks) (collectively "Defendants") have been sued in six interrelated class actions, in three

different federal district courts.  In essence, these class lawsuits seek damages allegedly caused

by Defendant TJX's Inc. failure to properly and adequately safeguard certain credit card and

debit card information and related data of its customers.

In the interest of mitigating the looming inefficiencies posed by litigating substantially similar cases in a variety of jurisdictions, Plaintiffs respectfully submit that the six TJX "retail security breach" cases against TJX should be transferred to a single district for pretrial proceedings. Plaintiffs also respectfully submit that the United States District Court for the District of Massachusetts is an appropriate forum for those proceedings. TJX is headquartered in Massachusetts. Many of the potential witnesses and documents relevant to plaintiffs' claims will therefore be located at TJX's headquarters in Massachusetts. Morever, four of the six actions have been filed in the District of Massachusetts, including an action by an Alabama bank and a West Virginia consumer.

## II.   BACKGROUND

Six class actions have been filed in three different federal districts. All the actions allege that TJX breached the duties owed to its customers by failing to maintain adequate computer data security. TJX, an off price retailer of apparel and home fashions, publicly announced on January 17, 2007 that its customer information that had been stolen from its systems and that millions of its customers may be exposed to identity theft from transactions that date back to 2003. TJX's press release stated that TJX discovered the intrusion in mid-December, 2006. Nevertheless, TJX did not announce the security breach until approximately one month later, when it issued its January 17, 2007 press release.

This intrusion involved portions of TJX's computer network that handles credit card, debit card, check and merchandise return transactions for its T.J. Maxx, Marshalls, HomeGoods, Bob's Stores and A.J. Wright stores in the United States and Puerto Rico. TJX is responsible for

properly securing its customers' financial and personal information. All actions allege that TJX

did not comply with card industry regulations and/or statutory requirements aimed at protecting

private financial information and that it maintained unprotected cardholder information on its

computer system.

Within ten (10) days after the first action was filed in the Northern District of Alabama,

other consumers and a retail bank in two other federal districts (Massachusetts and Puerto Rico)

filed class actions against Defendants TJX Companies, Inc., TJ Maxx, Fifth Third Bancorp and

Fifth Third Bank.  As of February 7, 2007, there are six interrelated actions pending in three

different federal districts[1]:

| Caption | District | Case No. | Ex |
|---|---|---|---|
| Wood v. TJX Inc., et al | Northern District Alabama | 2:07-cv-00147 | A |
| Mace v. TJX, Companies, Inc. | District of Mass. | 1:07-cv-10162 | B |
| Buckley v. TJX Companies, Inc. | District of Mass. | 1:07-cv-10209 | C |
| Gaydos v. TJX Companies, Inc., et al | District of Mass. | 1:07- cv-10217 | D |
| Amerifirst Bank v. TJX Companies, Inc., et al | District of Mass. | 1:07-cv-10169 | E |
| Miranda v. TJX, Inc., et al | District of Puerto Rico | 3:07-cv-01075 | F |

These six lawsuits are explicitly premised upon the core allegations relating to TJX's

---

[1]Pursuant to Panel Rule 7.2(a)(ii), the complete name of each action, including the full
name of all parties; the district court and division in which each action is pending; and the judge
assignment (if any) are listed in Schedule 1 attached to Plaintiffs' Motion to Transfer.

failure to take adequate measure to safeguard the personal and financial information and other related data of its customers.  In particular, the allegations of each complaint are that: (1) TJX failed to promptly and completely disclose the theft of its customers' personal and financial information; (2)  TJX failed to follow standard industry rules and regulations governing the protection of this information; (3) TJX breached its duty to use reasonable care to destroy, and not unnecessarily store, credit and debit card information and other personal information of its customers on its computer system; and (4) TJX knew or should have known that its computer network for processing and storing credit and debit card transactions and related information had security vulnerabilities.

Plaintiffs in these cases have pled a variety of legal theories against TJX and the other defendants, including negligence, breach of contract, bailment, and negligence per se.  The thread that ties the complaints together is that each plaintiff class seeks damages for TJX's alleged misconduct by allowing this retail security breach caused by failing to properly safeguard its customers' information on its computer system.

## III.   THE TJX 'RETAIL SECURITY BREACH' CASES SHOULD BE TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS FOR COORDINATED PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407, parties to duplicative litigation may request that this Panel designate a centralized forum for management of duplicative actions whenever cases pending in different districts threaten duplicative discovery, and whenever transfer of those cases would "promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a).  "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings."

Id. The multidistrict litigation involving the retail security breach of TJX's computer systems presents a paradigmatic case for multidistrict transfer under this framework.

As indicated above, the various actions against TJX and the other defendants are premised upon the same core allegations. As a result, they are highly likely to involve duplicative discovery, including shared witnesses and documents.  On this basis alone, the Panel has repeatedly recognized that creation of a centralized MDL forum is highly appropriate.  See, e.g., In re Merscorp, Inc., Real Estate Settlement Procedures, No. 1810, ___ F. Supp. 2d ___, 2007 WL 128792, at *1 (J.P.M.L. Jan.10, 2007) (holding that centralization under Section 1407 was warranted since all actions involved common questions of fact and centralization would promote just and efficient conduct of the litigation, and was necessary in order to eliminate duplicative discovery); In re NSA Telecomms. Records Litig., 444 F. Supp. 2d 1332, 1334 (J.P.M.L. 2006); In re Seroquel Prods. Liab. Litig., 447 F. Supp. 2d 1376, 1378 (J.P.M.L. 2006); In re Cobra Tax Shelters Litig., 408 F. Supp. 2d 1348, 1349 (J.P.M.L. 2005); In re Capital One Bank Credit Card Terms Litig., 201 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) ("[T]hese actions share sufficient complex common questions of fact...")

Each of the six interrelated class actions against TJX and the other defendants in the TJX "retail security breach" litigation involve common questions of fact and law, such as:

(1) whether Defendants were negligent in failing to keep card members' account, transaction and other non-public information secure and/or by failing to comply with payment card industry standards;

(2) whether Defendants were negligent in failing to inform, directly or indirectly in a timely fashion, card members and the financial institutions that issued credit/debit cards

Doc. 156124                                         -5-

of the occurrence of the security breach;

(3) whether the consumer class is entitled to notice as to whether the security of their credit card accounts or other non-public information was compromised as a result of the security breach at TJX; and

(4) whether the consumer class is entitled to ongoing credit monitoring.

Centralized proceedings in the TJX "retail security breach" litigation also will plainly serve "the convenience of the parties and witness." 28 U.S.C. §1407. Most fundamentally, transfer of these actions to a single district will permit the formulation of a rational, sequenced pretrial program that will streamline discovery, minimize witness inconvenience and overall discovery expenses and permit parties, through cooperation and pooling of resources, to benefit from the "economies of scale" that MDL pre-trial proceedings uniquely facilitate. See, e.g., In re NSA Telecomms. Records Litig., 444 F. Supp. 2d at 1334 (Centralization for pretrial proceedings was warranted to "prevent inconsistent pretrial rulings" and "conserve the resources of the parties, their counsel and the judiciary."); In re Seroquel Prods. Liab. Litig., 447 F. Supp. 2d at 1378; In re Banc of America Inv. Services, Inc., No. 1803, 2006 U.S. Dist. LEXIS 94113, at *4 (J.P.M.L. Dec. 19, 2006) ("Transfer under Section 1407 will have the salutary effect of assigning the present actions and any future tag-along actions to a single judge who can formulate a pretrial program ... that ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties and the courts."); In re Cobra Tax Shelters Litig., 408 F. Supp. 2d at 1349 ("Transfer under Section 1407 will offer the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate

discovery needs....").

At the same time, centralization of these six actions will mitigate the risk of inconsistent pretrial rulings that could affect the rights of TJX, the other Defendants and the Plaintiffs. Id. For instance, several pending actions seek certification of substantially overlapping national classes of TJX consumers. Compare Woods action, Ex. A; Mace action, Ex. B; Buckley action, Ex. C; Gaydos action, Ex. D; and Miranda action, Ex F. The fact that one action (Amerifirst Bank action, Ex. E) involves a putative class comprised of financial institutions rather than consumers is not a bar to transfer under 28 U.S.C. §1407. See, e.g. In re NSA Telecomms. Records Litig., 444 F. Supp. 2d at 1334 ("Transfer under Section 1407, however, does not require a complete identity ...."). As this Panel has consistently held, the existence and need to eliminate even the possibility of inconsistent rulings, especially with regard to class determinations, presents a reason for favoring transfer under Section 1407. See, e.g., In re LLRICE 601 Contamination Litig., No. 1811, 2006 U.S. Dist. LEXIS 94112, at *4-5 (J.P.M.L. Dec. 19, 2006); In re Lupron Mktg. & Sales Practices Litig., 180 F. Supp. 2d 1376, 1377-78 (J.P.M.L. 2001); In re Am. Gen. Life & Accident Ins. Co. Industrial Life Ins. Litig., 175 F. Supp. 2d 1380, 1381 (J.P.M.L. 2001)

Based upon the foregoing, Plaintiffs respectfully request that the Panel transfer the six interrelated TJX "retail security breach" actions to the United States District Court for the District of Massachusetts. TJX is headquartered in Massachusetts, underscoring that the District of Massachusetts is the appropriate transferee forum. The significance of the location of TJX's headquarters is reflected in the fact that four of the six actions were filed in Massachusetts, including the Mace action (Ex. B) filed by a West Virginia consumer and the Amerifirst Bank

action (Ex. E) filed by an Alabama bank. Many of the potential witnesses and documents relevant to plaintiffs' claims will therefore be located at TJX's headquarters in Massachusetts. Thus, many of the relevant acts and transactions relating to the TJX "retail security breach" litigation have taken place in Massachusetts. See In re Vonage Initial Public Offering (IPO) Sec. Litig., No. 1799, __ F. Supp. 2d ___, 2007 WL 128791, at *1 (J.P.M.L. Jan. 9, 2007) (holding that the District of New Jersey is the appropriate transferee forum in this docket because defendant Vonage is located in that district); In re Stand 'n Seal Products Liability Litig., No. 1804, 2007 U.S. Dist. LEXIS 3748, at *3 (J.P.M.L. Jan. 5, 2007) (holding that the Northern District of Georgia is an appropriate transferee forum in this docket since "two of the five corporate defendants have their principal places of business in that district, and thus witnesses and documents relevant to plaintiffs' claims are likely to be located there").

Since more than half of the TJX "retail security breach" actions have been filed in the District of Massachusetts, Massachusetts is the unquestionable geographic "center of gravity" and focal point of this litigation. As the Panel has repeatedly indicated, the geographic locus of duplicative litigation is the preferred forum for centralization of duplicative multi-district litigation. See, e.g., In re Merscorp, Inc., 2007 WL 128792, at *1 (holding that the Eastern District of Texas was the appropriate transferee forum since two of the eight actions were already pending in that state); In re Stand 'n Seal Products Liability Litig., 2007 U.S. Dist. LEXIS 3748, at *4 (holding that the Northern District of Georgia is an appropriate transferee forum in this docket since "one of the eleven actions is already pending in that district ..."); In re Commer. Money Ctr., Inc. Equip. Lease Litig., 229 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (centralizing litigation in the district "where almost half of the constituent actions are already pending"). In re

Lupron Mktg.& Sales Practices Litig., 180 F. Supp. 2d. at 1378 ) (holding that the District of

Massachusetts was the most appropriate transferee district for this litigation since "three of the

four actions now before the Panel are already pending there").

Since many of the actions against TJX and the other defendants have been filed in the

District of Massachusetts, transfer of the TJX"retail security breach" litigation can conserve

judicial resources and minimize any inconvenience to the parties and the court. See In re

Asbestos Prods. Liab. Litig. (No. VI), 771 F. Supp. 415, 422 (J.P.M.L. 1991) (transfer of actions

to the district with the greatest number of pending actions is the most likely to effectuate "an

overall savings of cost and a reduction of inconvenience to all concerned."). It should also be

noted that five of the six actions are pending in district courts governed under the Court of

Appeals for the First Circuit.

In short, the TJX "retail security breach" litigation, involving as it does the threat of

duplicative discovery, overlapping classes, conflicting pretrial rulings, and burgeoning

multidistrict litigation, presents a text book case for Section 1407 transfer. The District of

Massachusetts is the most appropriate transferee forum since Massachusetts is the "focal point"

of this litigation.

## IV.    CONCLUSION

For the foregoing reasons, transfer of the TJX "retail security breach" litigation against

TJX and the other defendants to a single centralized forum would further "the convenience of

parties and witnesses and [would] promote the just and efficient conduct of [the] actions." 28

U.S.C. § 1407(a).  Therefore, Plaintiffs respectfully request that this Panel enter an order

transferring the six actions identified in Schedule 1 to the Motion to Transfer to the District of

Massachusetts for coordinated pretrial proceedings.

Dated: February 8, 2007

                              Respectfully Submitted,

                              Wolf Popper LLP

                              By: *Danielle Disporto*
                              Lester L. Levy
                              Emily Madoff
                              Danielle Disporto
                              845 Third Avenue
                              New York, NY 10022
                              (212) 759-4600

                              Shapiro Haber & Urmy LLP
                              Thomas G. Shapiro
                              Robert E. Ditzion
                              53 State Street
                              Boston, MA 02109
                              (617) 439-3939

                              *Counsel for Plaintiffs Julie Buckley, Rachel*
                              *Rosenfeld, Kimberly Myck-Rawson, and*
                              *Jitka Parmet*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 5 2007

FILED
CLERK'S OFFICE

<u>Schedule 1</u>

BEFORE THE JUDICIAL PANEL

ON MULTI-DISTRICT LITIGATION

| | |
|---|---|
| ) | |
| ) | |
| IN RE: TJX COMPANIES, INC.  RETAIL  ) | MDL Docket No. _____ |
| SECURITY BREACH  LITIGATION         ) | |
| ) | |
| ) | |

**SCHEDULE OF ACTIONS AFFECTED BY PLAINTIFFS' MOTION FOR TRANSFER
AND CENTRALIZATION OF ALL RETAIL SECURITY BREACH LITIGATION TO
THE DISTRICT OF MASSACHUSETTS PURSUANT TO 28 U.S.C. §1407**

Pursuant to Rule 7.2(ii) of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation, Plaintiffs  provide the following information on the actions that will be affected by

this Motion:

**District of Massachusetts**

1.  <u>Amerifirst Bank v. TJX Companies, Inc., TJ Maxx, Fifth Third Bancorp and Fifth Third Bank</u>, Case No. 1:07-cv-10169-JLT; District of Massachusetts; Filed on January 29, 2007; Assigned to the Honorable Joseph L. Tauro.

2.  <u>Paula G. Mace v. TJX Companies, Inc.</u>, Case No. 1:07-cv-10162-WGY; District of Massachusetts; Filed on January 29, 2007; Assigned to the Honorable William G. Young.

3.  <u>Julie Buckley, Rachel Rosenfeld, Kimberly Myck-Rawson, and Jitka Parment v. TJX Companies, Inc.</u>, Case No. 1:07-cv-10209-RWZ; District of Massachusetts; Filed on February 2, 2007; Assigned to the Honorable Rya W. Zobel

4.  <u>Thomas J. Gaydos  v. TJX Companies, Inc. and Fifth Third Bancorp</u>, Case No. 1:07-cv-10217-WGY; District of Massachusetts; Filed on February 5, 2007; Assigned to the Honorable William G. Young

**Northern District of Alabama**

5.  <u>Jo Wood and Katie Willoughby v. TJX, Inc. and Fifth Third Bancorp</u>, Case No. 2:07-cv-00147-RDP; Northern District of Alabama; Filed on January 19, 2007; Assigned to the Honorable R. David Proctor

**District of Puerto Rico**

6.  <u>Patricia Miranda, Mary Robb Farley and Marcela Jenkins v. TJX, Inc. and Fifth Third Bancorp</u>, Case No. 3:07-cv-01075-FAB; District of Puerto Rico; Filed on January 31,

2007; Assigned to the Honorable Francisco A. Besosa.

Dated: February 8, 2007

Respectfully Submitted,

Wolf Popper LLP

By: *Danielle Disporto*
Lester L. Levy
Emily Madoff
Danielle Disporto
845 Third Avenue
New York, NY 10022
(212) 759-4600

Shapiro Haber & Urmy LLP
Thomas G. Shapiro
 Robert E. Ditzion
53 State Street
Boston, MA 02109
(617) 439-3939

*Counsel for Plaintiffs Julie Buckley,*
*Rachel Rosenfeld, Kimberly Myck-Rawson,*
*and Jitka Parmet*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 5 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTI-DISTRICT LITIGATION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE: TJX COMPANIES, INC.  RETAIL | ) | MDL Docket No. _____ |
| SECURITY BREACH  LITIGATION | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Danielle Disporto, certify that on February 8, 2007, I caused copies of the Motion of

Plaintiffs Julie Buckley, Rachel Rosenfeld, Kimberly Myck-Rawson, and Jitka Parmet

(collectively "Plaintiffs") pursuant to 28 U.S.C. §1407 for transfer and centralization of all retail

security breach litigation in the District of Massachusetts; Schedule of Actions Affected by the

Motion to Transfer; Memorandum of Law in Support of the Motion to Transfer; and the

Declaration of Danielle Disporto in Support of the Motion to Transfer, and accompanying

Exhibits A through F to be served via U.S. mail, first class postage prepaid, to the following:

Eric M. Quetglas-Jordan
Quetglas Law Office
PO Box 16606
San Juan, PR 00908-6606
*(Counsel for Plaintiffs Patricia Miranda, Mary Robb Farley and  Marcela Jenkins)*

Doc.

Patrick Sheehan
Whatley Drake & Kallas
1540 Broadway, 37th Floor
New York, NY 10036
(Counsel for Plaintiff Amerifirst Bank)


Jonathan Shapiro
Stern, Shapiro, Weissberg & Garin
Suite 500
90 Canal Street
Boston, MA 02114-2022
(Counsel for Plaintiffs Thomas J. Gaydos and Paula G. Mace)


Andrew C. Allen
Joe R. Whatley, Jr.
Richard P. Rouco
Whatley Drake LLC
2323 Second Avenue North
Post Office Box 10647
Birmingham, AL 35202-0647
(Counsel for Plaintiffs Jo Wood and Katie Willoughby)


Archie C. Lamb, Jr.
F. Inge Johnstone
The Lamb Firm
2017 Second Avenue North
Birmingham, AL 35203
(Counsel for Plaintiffs Jo Wood and Katie Willoughby)


TJX Companies, Inc.
770 Cochituate Road
Framingham, MA 01701


TJX Inc.
770 Cochituate Road
Framingham, MA 01701


TJ Maxx
770 Cochituate Road
Framingham, MA 01701

Fifth Third Bancorp
Fifth Third Center
38 Fountain Square Plaza
Cincinnati, OH 45263

Fifth Third Bank
Fifth Third Center
38 Fountain Square Plaza
Cincinnati, OH 45263

Clerk of the Court
United States District Court
District of Puerto Rico (San Juan)
Clemente Ruiz-Nazario U.S. Courthouse &
Federico Degetau Federal Building
150 Carlos Chardon Street
Hato Rey, P.R. 00918

Clerk of the Court
United States District Court
District of Massachusetts (Boston)
John Joseph Moakley
U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

Clerk of the Court
United States District Court
Northern District of Alabama (Southern)
Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, AL 35203

Dated: February 8, 2007

Respectfully Submitted,

Wolf Popper LLP

By: Danielle Disporto

Lester L. Levy
Emily Madoff
Danielle Disporto

Doc.                                    -3-

845 Third Avenue
New York, NY 10022
(212) 759-4600

Shapiro Haber & Urmy LLP
Thomas G. Shapiro
 Robert E. Ditzion
53 State Street
Boston, MA 02109
(617) 439-3939

*Counsel for Plaintiffs Julie Buckley, Rachel
Rosenfeld, Kimberly Myck-Rawson, and
Jitka Parmet*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 1 5 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL

ON MULTI-DISTRICT LITIGATION

```
                                    )
                                    )
IN RE: TJX COMPANIES, INC.  RETAIL  )      MDL Docket No. _____
SECURITY BREACH  LITIGATION         )
                                    )
                                    )
```

**DECLARATION OF DANIELLE DISPORTO IN SUPPORT OF MOTION OF
PLAINTIFFS JULIE BUCKLEY, RACHEL ROSENFELD, KIMBERLY MYCK-
RAWSON AND JITKA PARMET PURSUANT TO 28 U.S.C. §1407 FOR TRANSFER
AND CENTRALIZATION OF ALL RETAIL SECURITY BREACH LITIGATION TO
THE DISTRICT OF MASSACHUSETTS**

**DANIELLE DISPORTO,** being duly admitted to practice law in the State of New York,

does hereby state under the penalties of perjury that:

1.      I am an attorney at Wolf Popper LLP, counsel for Plaintiffs Julie Buckley, Rachel

Rosenfeld, Kimberly Myck-Rawson, and Jitka Parmet (collectively "Plaintiffs") in a class action

pending in the District of Massachusetts, entitled Buckley v. TJX Companies, Inc., Case No.

1:07-cv-10209.

2.      I make this affidavit in support of Plaintiffs' motion pursuant to 28 U.S.C. § 1407

for transfer and centralization of all retail security breach litigation to the United States District

Court for the District of Massachusetts.

     3.    Appended hereto in support of the motion are the following exhibits:

Exhibit A: Class Action Complaint filed in the Northern District of Alabama entitled

Wood v. TJX, Inc., et al, Case No. 2:07-cv-00147 (Hon. R. David Proctor).

     Exhibit B: Class Action Complaint filed in the District of Massachusetts entitled Mace v.

TJX Companies, Inc., Case No. 1:07-cv-10162 (Hon. William G. Young).

     Exhibit C: Class Action Complaint filed in the District of Massachusetts entitled Buckley

v. TJX Companies, Inc., Case No. 1:07-cv-10209 (Hon. Rya W. Zobel).

     Exhibit D: Class Action Complaint filed in the District of Massachusetts entitled Gaydos

v. TJX Companies, Inc., et al, Case No. 1:07-cv-10217 (Hon. William G. Young).

     Exhibit E: Class Action Complaint filed in the District of Massachusetts entitled

Amerifirst v. TJX Companies, Inc., et al, Case No. 1:07-cv-10169 (Hon. Joseph L. Tauro).

     Exhibit F: Class Action Complaint filed in the District of Puerto Rico entitled Miranda v.

TJX, Inc., et al, Case No. 3:07-cv-01075 (Hon. Francisco A. Besosa).


     I declare under penalty of perjury that the foregoing facts are true and correct and that this

declaration was executed on February 8, 2007.


Danielle Disporto
Danielle Disporto

Exhibit A

# U.S. District Court
## Northern District of Alabama (Southern)
## CIVIL DOCKET FOR CASE #: 2:07-cv-00147-RDP

Wood et al v. TJX, Inc et al                          Date Filed: 01/19/2007
Assigned to: Judge R David Proctor                    Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Other Contract               Nature of Suit: 190 Contract: Other
                                                      Jurisdiction: Diversity

**Plaintiff**

**Jo Wood**                              represented by   **Andrew C Allen**
*individually and on behalf of a class similarly*         WHATLEY DRAKE & KALLAS LLC
*persons*                                                 2323 Second Avenue North
                                                          Post Office Box 10647
                                                          Birmingham, AL 35202-0647
                                                          328-9576
                                                          Email: ecf@whatleydrake.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Joe R Whatley, Jr**
                                                          WHATLEY DRAKE LLC
                                                          2323 2nd Avenue, North
                                                          P. O. Box 10647
                                                          Birmingham, AL 35202-0647
                                                          205-328-9576
                                                          Fax: 205-328-9669
                                                          Email: jwhatley@whatleydrake.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Richard P Rouco**
                                                          WHATLEY DRAKE LLC
                                                          2323 Second Avenue North
                                                          Post Office Box 10647
                                                          Birmingham, AL 35202-0647
                                                          205-328-9576
                                                          Fax: 205-328-9669
                                                          Email: ecf@whatleydrake.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Archie C Lamb, Jr**
                                                          THE LAMB FIRM
                                                          2017 Second Avenue North, Suite 200
                                                          Birmingham, AL 35203
                                                          205-324-4644
                                                          Fax: 205-324-4649
                                                          Email: alamb@archielamb.com
                                                          *ATTORNEY TO BE NOTICED*

F Inge Johnstone
THE LAMB FIRM
2017 Second Avenue North, Suite 200
Birmingham, AL 35203
205-324-4644
Fax: 205-324-4649
Email: ijohnstone@archielamb.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Katie Willoughby**
*individually and on behalf of a class similarly*
*persons*

represented by **Andrew C Allen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joe R Whatley, Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard P Rouco**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Archie C Lamb, Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**F Inge Johnstone**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TJX, Inc**

**Defendant**

**Fifth Third Bancorp**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/19/2007 | 1 | COMPLAINT against TJX, Inc, Fifth Third Bancorp (Filing fee $ 350.00, receipt # 200 233080.) , filed by Jo Wood, Katie Willoughby.(KSS, ) (Entered: 01/22/2007) |
| 01/19/2007 | 2 | Request for service by certified mail filed by Jo Wood, Katie Willoughby. (KSS, ) (Entered: 01/22/2007) |
| 01/22/2007 | 3 | Summons Issued as to TJX, Inc, Fifth Third Bancorp mailed certified mail. (KSS, ) (Entered: 01/22/2007) |
|  |  |  |

| 01/25/2007 | 4 | SUMMONS Returned Executed as to Fifth Third Bancorp served on 1/24/2007, answer due 2/13/2007. (KSS, ) (Entered: 01/26/2007) |
| 02/05/2007 | 5 | Summons Returned Unexecuted as to TJX, Inc. (not deliverable as addressed-unable to forward) (KSS, ) (Entered: 02/05/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/07/2007 10:39:26 | | |
| **PACER Login:** | wp0011 | **Client Code:** | 3204 |
| **Description:** | Docket Report | **Search Criteria:** | 2:07-cv-00147-RDP |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

FILED
2007 Jan-22  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



**FILED**

**JAN 1 9 2007**

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### (Southern Division)

| | | |
|---|---|---|
| Jo Wood and Katie Willoughby, | ) | |
| Individually and on behalf of a class | ) | |
| Similarly persons, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. |
| | ) | |
| TJX, Inc., and Fifth Third Bancorp, | ) | |
| | ) | |
| Defendants. | ) | CV-07-P-0147-S |

## Class Action Complaint

The Plaintiffs, individually and on behalf of a class of similarly situated persons, complain against the Defendants as follows:

### Introduction

1.    Plaintiffs bring this action individually and on behalf of a class of similarly situated class members for injuries suffered as a result of Defendants' wrongful conduct. In what has recently been described as potentially the largest retail security breach ever to have occurred in the United States, the Defendant TJX announced on January 17, 2007 that it had detected an unauthorized intrusion into its computer systems that process and store information related to customer transactions. This intrusion involved portions of TJX's computer network that handles credit card, debit card, check and merchandise return transactions for customers of its T.J. Maxx, Marshalls, HomeGoods, Bob's Stores and A.J. Wright stores in the United States and Puerto Rico. According to TJX's press release, the intrusion involved credit and debit card

transactions occurring in 2003 and most recently for the period from mid-May through December, 2006. Additionally, what makes the intrusion into the TJX computer system particularly alarming is that the breach involved customer information such as drivers' license and checking accounts linked to transactions for returned merchandise and was not limited to credit and debit card information.

2.      This case arose because the Defendants have both statutory and common law duties to adequately protect their customers' non-public and private financial information. The Defendants breached the duties owed to its customers by failing to maintain adequate computer data security. Given the well-publicized breaches in 2005 involving CardSystems Solutions, the Defendants should have undertaken adequate measures to thwart and/or detect intrusions into their computer systems.

### Parties & Venue

3.      The plaintiff Jo Wood is a resident of the State of Alabama. She resides in the Northern District of Alabama and is a customer of T.J. Maxx.

4.      The plaintiff Katie Willoughby is a resident of the State of Alabama. She resides in the Northern District of Alabama and is a customer of T.J. Maxx.

5.      The defendant TJX, Inc. is incorporated in the State of Massachusetts. TJX is an off price retailer of apparel and home fashions. TJX regularly transacts business in the State of Alabama. It owns the T.J. Maxx and Marshalls stores that operate in the Northern District of Alabama.

6.      The defendant Fifth Third Bancorp (hereinafter Fifth Third Bank) is charted in the State of Ohio. Upon information and belief, Fifth Third Bank is the sponsoring bank that handled TJX's credit card accounts.

## Jurisdiction

7.      This Court has diversity jurisdiction over the claims asserted in the complaint.   The amount in controversy exceeds $75,000 and there exists complete diversity with respect to the named parties.  Additionally, the Court has jurisdiction under the Class Action Fairness Act because this class has more than 100 hundred persons and the amount at issue exceeds five (5) million dollars.

## Factual Allegations

8.      The plaintiff Jo Wood holds a Capital One credit card that is endorsed by T.J. Maxx.   She made credit card transactions at T.J. Maxx during the period that TJX announced its computer system had been compromised.   Ms. Wood also recently identified two fraudulent credit card transactions on her account.

9.      The plaintiff Katie Willoughby is a T.J. Maxx customer.  She made credit card transactions at T.J. Maxx during the period that TJX announced its computer system had been compromised. Ms. Willoughby also holds a TJX credit card account.

10.     On January 17, 2007, TJX announced that its computer system had been compromised and that the intrusion resulted in the theft of private financial data related customer transactions. TJX further stated that it has identified customer information that has been stolen from its systems.

11.     Upon information and belief, Fifth Third Bancorp processed credit card and debit card transactions for TJX.   Fifth Third Bancorp served in the capacity as the acquiring bank (or the merchant acquirer).   As the merchant acquirer, Fifth Third Bancorp takes the credit card transactions from TJX and transmits them to the bank issuing the card.  Once the cardholder bank (the issuing bank) authorizes payment, Fifth

Third Bancorp credits TJX's merchant account with the purchase price minus transactions fees.

12.    Although U.S. retailers who accept credit cards and the merchant acquirers are required to abide by card-industry regulations governing credit card transactions, many merchants don't comply with them. The rules that cover transactions on cards branded with logos from Visa, MasterCard International Inc., American Express Co. and Discover Financial Services, require merchants to validate a series of security measures, such as the establishment of firewalls to protect databases. Among other things, merchants are prohibited from storing unprotected cardholder information. According to the Wall Street Journal On-Line, Visa has reported that only 31% comply with card industry requirements. Upon information and belief, TJX did not comply with card industry regulations and/or statutory requirements aimed at protecting private financial information.    Upon information and belief, TJX maintained unprotected cardholder information on its computer system.

13.    Moreover, as member of the Visa and MasterCard networks, the Fifth Third Bancorp as the merchant acquirer was obligated to ensure that the TJX's computer system complied with statutory requirements and/or card industry regulations.

## Class Allegations

14.    Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated pursuant to Rule 23 of the *Federal Rules of Civil Procedure*. Plaintiffs seek certification of a class under Rule 23(b)(1), (b)(2) and (b)(3).

15.    Class definition: The class that Plaintiffs seek to represent is defined as all TJX customers who made credit card transactions at TJX's stores during the period that

the security of Defendants computer systems were compromised and the privacy or security of whose credit card, check card, or debit card account, transaction or non-public information was compromised.

16.   <u>Numerosity</u>:   The class is composed of thousands of persons the joinder of which would be impracticable. The individual identities of the individual members are ascertainable through Defendants' records or by public notice.

17.   <u>Commonality</u>: There is a well-defined community of interest in the questions of law and fact involved affecting the members of the class. The questions of law and fact common to the class predominate over questions affect only individual class members, and include, but are not limited to, the following:

a.   Whether Defendants TJX and First Third Bank breached a duty and was negligent in failing to keep card members' account, transactions, and other non-public information secure;

b.   Whether all Defendants, or any of them, breached duties and was negligent in failing to inform directly or indirectly in a timely fashion card members (the security of whose accounts or other non-public information was compromised) of the occurrence of such a compromise of security;

c.   Whether the consumer class is entitled to notice as to whether the security of their credit card account or other non-public information was compromised as a result of a breach of security at TJX;

d.   Whether the consumer class is entitled to any other remedies such as ongoing credit monitoring, on account f the breach of duties of Defendants, or any of them;

      e.     Whether the class is entitled to declaratory relief;

      f.     Whether the class is entitled to injunctive relief; and,

      g.     Whether the class is entitled to an award of reasonable attorneys'

fees and costs of suit.

18.     <u>Typicality and Adequacy</u>: Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class members they seek to represent and they are similarly situated with members of their class. Plaintiffs will fairly and adequately represent and protect the interests of the class, and Plaintiffs' interests are not antagonistic to the class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

19.     A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and class members' claims. Plaintiffs and the members of the class have suffered irreparable harm as a result of Defendants unfair, deceptive and unlawful conduct. Because of the size of the individual class members' claims, few, if any, class members could afford to seek legal redress for the wrongs complained of herein. Absent the class action, the members of the class will continue to suffer losses in violations of law and wrongs described herein will continue without remedy. Defendants continue to deny wrongdoing and to engage in the unfair, unlawful, and deceptive conduct that is the subject of this complaint.

**COUNT I**

**NEGLIGENCE PER SE**

20.     The Plaintiffs incorporate by reference and restate the factual allegations in the preceding paragraphs.

21.     Defendants had a duty pursuant to the Graham-Leach-Bliley Act to

protect and keep customer information confidential.  For example, 15 U.S.C.A. § 6801

provides:

(a) Privacy obligation policy:

It is the policy of the Congress that each financial institution has an affirmative and
continuing obligation to respect the privacy of its customers and to protect the security
and confidentiality of those customers' nonpublic personal information.

(b) Financial institutions safeguards
In furtherance of the policy in subsection (a) of this section, each agency or authority
described in section 6805(a) of this title shall establish appropriate standards for the
financial institutions subject to their jurisdiction relating to administrative, technical, and
physical safeguards--
(1) to insure the security and confidentiality of customer records and
information;
(2) to protect against any anticipated threats or hazards to the security or
integrity of such records; and
(3) to protect against unauthorized access to or use of such records or
information which could result in substantial harm or inconvenience to
any customer.

In addition to these requirements, 15 U.S.C.A. § 6809 also provides as follows:

(4) Nonpublic personal information

(A) The term "nonpublic personal information" means personally identifiable financial
information--
(i) provided by a consumer to a financial institution;
(ii) resulting from any transaction with the consumer or any service performed for the
consumer; or
(iii) otherwise obtained by the financial institution.
(B) Such term does not include publicly available information, as such term is defined by
the regulations prescribed under section 6804 of this title.
(C) Notwithstanding subparagraph (B), such term--
(i) shall include any list, description, or other grouping of consumers (and publicly
available information pertaining to them) that is derived using any nonpublic personal
information other than publicly available information; but

22.     The Defendant Fifth Third Bancorp failed to comply with the requirements of Section 6801 by not providing for adequate safeguards.

23.     Additionally, the Defendants were obligated to comply with credit card industry regulations that prohibit, among other things, storage of unprotected credit card information.

24.     The failure to comply with Section 6801 and/or industry regulations with respect to plaintiffs and class members credit card transactions constitutes negligence *per se*.

25.     Plaintiffs and the class have been injured as a proximate result of these breaches and Defendant's conduct constitutes negligence per se.

## COUNT II

### (Negligence)

26.     The Plaintiffs incorporate by reference and restate the factual allegations in the preceding paragraphs.

27.     The Defendants came into possession of private financial information and had a duty to adequately protect it from theft.  The Defendants did not exercise reasonable care in safeguarding such information.

28.     Plaintiffs and the class have been injured as a proximate result of these breaches and Defendants' conduct constitutes negligence.

## COUNT III

### (Common Law Bailment)

29.     The Plaintiffs incorporate by reference and restate the factual allegations in the preceding paragraphs.

30.     The private financial information, including credit card numbers,

constitute plaintiffs and class members personal property.

31.     The plaintiffs and class members entrusted such personal property to the

defendants.

32.     As bailees, the defendants had an obligation to adequately protect the

personal property entrusted from theft, unauthorized disclosure and/or other conduct that

might compromise such property.

33.     The defendants breached the duties arising from the bailment by failing to

adequately protect the plaintiffs and class members personal property (i.e. financial

information).

34.     Plaintiffs and the class have been injured as a proximate result of these

breaches and Defendants' conduct constitutes a breach of the duties arising from the

common law bailment.

## <u>COUNT IV</u>

### (Breach of Contract)

35.     The Plaintiffs incorporate by reference and restate the factual allegations

in the preceding paragraphs.

36.     The plaintiffs, class members and defendants were parties to a contract

that required the defendants to adequately protect credit card, debit card and other

personal information from theft or unauthorized disclosure.

37.     Alternatively, the plaintiffs and class members were third party

beneficiaries to contracts and/or agreements that the defendants entered into with card

issuing banks and/or credit card associations/networks.  These agreements required the

defendants to adequately safeguard credit card, debit card and/or other personal information from theft or unauthorized disclosure.

38.    The defendants breached their agreements with the plaintiffs, class members and/or other financial institution or associations by failing to adequate safeguard plaintiffs and class members private financial information.

39.    Plaintiffs and the class have been injured as a proximate result of these breaches and Defendants' conduct constitutes a breach of the duties arising from the common law bailment.

## Prayer for Relief

40.    Wherefore premises considered, the Plaintiffs, individually and on behalf of the class, respectfully request that the Court enter an order:

(1)    requiring the defendants to make whole any losses suffered by the plaintiffs and class as a result of their misconduct;

(2)    requiring the defendants to compensate plaintiffs and/or provide monies needed to monitor the plaintiffs and class members financial accounts;

(3)    enjoining the defendants from further actions which place the consuming class at risk of future security breaches;

(4)    requiring the defendants to pay plaintiffs and class members a reasonable attorney's fee and costs of litigation and;

(5)    providing for such other legal and/or equitable relief as the cause of justice requires.

## Jury Demand

The Plaintiffs request a trial by struck jury.

Joe R. Whatley, Jr.
Andrew C. Allen
Richard P. Rouco

OF COUNSEL

Whatley Drake & Kallas,
2323 Second Avenue North
Birmingham, Alabama 35203
205-328-9576

OF COUNSEL

Archie C. Lamb, Jr.
Inge Johnstone
LAW OFFICES OF ARCHIE C. LAMB, JR.
2017 2nd Avenue North
Suite 200
Birmingham, AL  35203
205-324-4644


**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**


TJX COMPANIES, INC.
c/o The Corporation Company
60 Commerce Street
Montgomery, Alabama  36103

TJ MAXX
c/o The Corporation Company
60 Commerce Street
Montgomery, Alabama  36103

FIFTH THIRD BANCORP
c/o Csc Lawyers Incorporating Service
150 S. Perry Street
Montgomery, Alabama  36104

Exhibit B

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:07-cv-10162-WGY

Mace v. TJX Companies, Inc.
Assigned to: Judge William G. Young
Demand: $5,000,000
Related Case: 1:07-cv-10209-RWZ
Cause: 28:1332 Diversity-Property Damage

Date Filed: 01/29/2007
Jury Demand: Plaintiff
Nature of Suit: 380 Personal Property: Other
Jurisdiction: Diversity

**Plaintiff**

**Paula G. Mace**
*on behalf of herself and all others similarly
situated*

represented by **Jonathan Shapiro**
Stern, Shapiro, Weissberg & Garin
Suite 500
90 Canal Street
Boston, MA 02114-2022
617-742-5800
Fax: 617-742-5858
Email: jshapiro@sswg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TJX Companies, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/29/2007 | 1 | COMPLAINT against TJX Companies, Inc. , filed by Paula G. Mace. (Attachments: # 1 Civil Cover Sheet)(Abaid, Kim) (Entered: 01/29/2007) |
| 01/29/2007 | | Filing fee: $ 350.00, receipt number 77898 for 1 Complaint (Abaid, Kim) (Entered: 01/29/2007) |
| 01/29/2007 | | Summons Issued as to TJX Companies, Inc.. (Abaid, Kim) (Entered: 01/29/2007) |
| 01/30/2007 | | ELECTRONIC NOTICE of Case Assignment. Judge Reginald C. Lindsay assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Collings (Hurley, Virginia) (Entered: 01/30/2007) |
| 01/31/2007 | | Judge Reginald C. Lindsay : Electronic ORDER OF RECUSAL ENTERED: Judge Lindsay is recused in this matter because he is a member of the Board of Directors of a charitable organization which has a long-standing, close and continuing collaboration with TJX Companies, Inc. The clerk shall have this case drawn to another judge of this court(Lindsay, Reginald) (Entered: 01/31/2007) |
| 02/02/2007 | | Case Reassigned to Judge William G. Young. Judge Reginald C. Lindsay no longer assigned to the case. (Filo, Jennifer) (Entered: 02/02/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/07/2007 11:18:54 | | | |
| **PACER Login:** | wp0011 | **Client Code:** | 3204 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-10162-WGY |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

FILED
IN CLERK'S OFFICE

2007 JAN 29  P 3: 59

U.S. DISTRICT COURT
DISTRICT OF MASS.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PAULA G. MACE, on behalf of herself
and all others similarly situated,       :

                              Plaintiff,       :

                            v.       :

TJX COMPANIES, INC.,       :

                          Defendant.       :

Civil Action No: _____

COMPLAINT - CLASS ACTION

<u>JURY TRIAL DEMANDED</u>

## <u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>

Plaintiff Paula G. Mace ("Plaintiff") hereby brings this class action suit against TJX Companies, Inc. ("TJX" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which included, *inter alia*, review and analysis of Defendant's website and press release, and various new articles.

## <u>NATURE OF THIS ACTION</u>

1.    Plaintiff brings this class action suit on her own behalf and on behalf of all other persons or entities in the United States against TJX to redress TJX's failure to adequately safeguard certain credit card and debit card information and related data. More specifically, this action arises from TJX's failure to maintain adequate computer data security of customer credit and debit card data, which was accessed and stolen by a computer hacker. As a result of TJX's wrongful actions, customer information was stolen from TJX's computer network that handles a wide range of financial information for millions of customers, including credit cards, debit cards linked to checking accounts, and transactions for returned merchandise. Because of TJX's actions, hundreds of

thousands or even millions of its customers have had their personal financial information compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identity theft, and have otherwise suffered damages.

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1332(d), as the matter in controversy exceeds $5 million, Plaintiff has diverse citizenship from Defendant TJX, and there are more than 100 class members.

3.      Venue properly lies in this District pursuant to 28 U.S.C. §1391(a)(2), since the cause of action arose in this District, and the unlawful conduct of Defendant, out of which the cause of action arose, took place in this District.

### PARTIES

4.      Plaintiff Paula G. Mace resides in Horner, West Virginia.  Plaintiff Mace had her debit card data stolen from TJX's computer system, and has been damaged as a result.

5.      Defendant TJX is a Delaware corporation with its headquarters at 770 Cochituate Road, Framingham, Massachusetts, 01701.  TJX operates retail chains in Massachusetts and throughout the United States.

### OPERATIVE FACTS

6.      TJX purports to be the leading off-price apparel and home fashion retailer in the United States and worldwide, with $16 billion in revenues in 2005.  Its stock trades on the New York Stock Exchange under the symbol TJX. TJX operates more than 2,300 retail stores under such chains as T.J. Maxx, Marshalls, HomeGoods, A.J. Wright, and Bob's Stores. These stores are located across the United States.

7.      On January 17, 2007, TJX first publicly announced that it had been hit by a wide-

reaching security breach that may leave millions of its customers around the world exposed to fraud

and identity theft from transactions that date back to 2003.  TJX's press release stated, in relevant

part:

> The TJX Companies, Inc. (NYSE:TJX) today announced that it has suffered
> an unauthorized intrusion into its computer systems that process and store
> information related to customer transactions. While TJX has specifically identified
> some customer information that has been stolen from its systems, the full extent of
> the theft and affected customers is not yet known. This intrusion involves the portion
> of TJX's computer network that handles credit card, debit card, check, and
> merchandise return transactions for customers of its T.J. Maxx, Marshalls,
> HomeGoods and A.J. Wright stores in the U.S. and Puerto Rico, and its Winners and
> HomeSense stores in Canada, and may involve customers of its T.K. Maxx stores in
> the U.K. and Ireland. The intrusion could also extend to TJX's Bob's Stores in the
> U.S.
>
> . . .
>
> Through its investigation, TJX has learned the following with respect to the
> intrusion:
>
> •    An unauthorized intruder accessed TJX's computer systems that process and
>      store information related to customer transactions for its T.J. Maxx,
>      Marshalls, HomeGoods and A.J. Wright stores in the U.S. and Puerto Rico
>      and its Winners and HomeSense stores in Canada.
>
> •    . . . . It is possible that the intrusion may extend to Bob's Stores.
>
> •    Portions of the information stored in the affected part of TJX's network
>      regarding credit and debit card sales transactions in TJX's stores (excluding
>      Bob's Stores) in the U.S., Canada, and Puerto Rico during 2003, as well as
>      such information for these stores for the period from mid-May through
>      December, 2006 may have been accessed in the intrusion. TJX has provided
>      the credit card companies and issuing banks with information on these and
>      other transactions.
>
> •    To date, TJX has been able to specifically identify a limited number of credit
>      card and debit card holders whose information was removed from its system
>      and is providing this information to the credit card companies. In addition,
>      TJX has been able to specifically identify a relatively small number of

3

customer names with related drivers' license numbers that were also removed from its system, and TJX is contacting these individuals directly.

- TJX is continuing its investigation seeking to determine whether additional customer information may have been compromised. TJX does not know if it will be able to identify additional information of specific customers that may have been taken.

8.    TJX's press release also stated that TJX discovered the intrusion in "mid-December, 2006." Nevertheless, TJX did not announce the intrusion until approximately one month later, when it issued its January 17, 2007 press release.

9.    TJX's press release also stated that after the security breach occurred, the Company "significantly strengthened the security of its computer systems." The Company did not specify the nature of the improvements.

10.    On its website, in a section titled "Frequently Asked Questions" concerning the security breach, TJX stated that the drivers' license numbers that were stolen were received in transactions where merchandise was returned without receipts. The Company alluded to the possibility that some customers' drivers' license numbers may be the same as their social security numbers.

11.    On January 18, 2007, The Wall Street Journal reported that "people familiar with the matter said the number of exposed cards could exceed the 40 million that were made vulnerable to fraud nearly two years ago in a breach involving CardSystems Solutions, Inc."

12.    On January 19, 2007, The Wall Street Journal reported that the security breach "exposed millions of consumers to potential fraud." It reiterated that the number of exposed cards could exceed 40 million, citing representatives from Visa. The article also stated that "'patterns of counterfeit fraud have been reported on some of the affected accounts,'" quoting a letter from Visa.

4

13.     U.S. retailers, including TJX, are required to follow stringent card-industry rules. The rules that cover transactions on cards branded with logos from Visa, MasterCard International Inc., American Express Co. and Discover Financial Services, require merchants to validate a series of security measures, such as the establishment of firewalls to protect databases. Among other things, merchants are prohibited from storing unprotected cardholder information. According to The Wall Street Journal on January 19, 2007, "[p]eople familiar with the situation have said that TJX doesn't comply with those requirements."

14.     Fraudulent purchases using credit and debit card numbers stolen from TJX have surfaced in several states. Hundreds of thousands of customer accounts have been affected.

15.     One TJX customer said that about $6,700 in unauthorized transactions were made with his card account number during a 10 hour period in early January 2007.

16.     The security breach at TJX is currently being investigated by the Federal Bureau of Investigation, the U.S. Attorney's Office in Boston, and other law enforcement agencies.

17.     Plaintiff Paula Mace shopped at T.J. Maxx in December 2006, using her Visa debit card. In mid to late January 2007, her bank notified her that her debit card had been compromised as part of T.J. Maxx's recent loss of customer data. Thus, as a result of TJX's actions, Plaintiff has had personal financial information compromised, she has had her privacy rights violated, and she has been exposed to the risk of credit card fraud and identity theft.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this class action, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of herself and all others similarly situated, consisting of all persons or entities in the United States who have had personal or financial data stolen from TJX's computer network,

and who were damaged thereby (the "Class"). The Class does not include TJX, or its officers, directors, agents, or employees.

19.    The Class consists of hundreds of thousands, and possibly millions, of customers of TJX and its subsidiaries located throughout Massachusetts and the United States. While the exact number of Class members and the identities of individual Class members are unknown at this time, and can only be ascertained through appropriate discovery, based on the fact that hundreds of thousands of customer accounts have already been affected, the Class is so numerous that joinder of all Class members is impracticable.

20.    Defendant's conduct affected all Class members in exactly the same way. Defendant's conduct in failing to properly safeguard its customers' personal and financial data and in failing to notify customers of the security breach as soon as practical after the breach was discovered is completely uniform among the Class.

21.    Questions of law and fact common to all Class members predominate over any questions affecting only individual members. Such questions of law and fact common to the Class include:

a.    whether Defendant acted wrongfully by failing to properly safeguard its customers' financial data;

b.    whether Defendant failed to notify Class members of the security breach as soon as practical after the breach was discovered; and

c.    whether Plaintiff and the Class have been damaged, and, if so, what is the appropriate relief as to each member of the Class.

22.    Plaintiff's claims, as described herein, are typical of the claims of all Class members,

as the claims of Plaintiff and all Class members arise from the same set of facts regarding Defendant's failure to protect Class members' financial data. Plaintiff maintains no interests that are antagonistic to the interests of other Class members.

23.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions of this type. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     This class action is a fair and efficient method of adjudicating the claim of Plaintiff and the Class for the following reasons:

        a.     common questions of law and fact predominate over any question affecting any individual Class member;

        b.     the prosecution of separate actions by individual members of the Class would likely create a risk of inconsistent or varying adjudications with respect to individual members of the Class thereby establishing incompatible standards of conduct for Defendant or would allow some Class members' claims to adversely affect other Class members' ability to protect their interests;

        c.     Plaintiff is not aware of any other litigation of these issues ongoing in this State or elsewhere brought by a nationwide class of consumers of TJX;

        d.     this forum is appropriate for litigation of this action since the cause of action arose in this District;

        e.     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

        f.     the Class is readily definable, and prosecution as a class action will eliminate

the possibility of repetitious litigation, while also providing redress for claims that may be too small to support the expense of individual, complex litigation.

25.    For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

<u>**COUNT I**</u>

<u>**NEGLIGENCE**</u>

26.    Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

27.    Defendant TJX assumed a duty to use reasonable care to keep the credit card and other nonpublic information of the Class that is, or was, in its possession and control private and secure. By its acts and omissions described herein, Defendant unlawfully breached this duty. The Class was damaged thereby.

28.    The private financial information of the Class that was compromised by the breach of Defendant's security included, without limitation, information that was being improperly stored and inadequately safeguarded in violation of, among other things, industry rules and regulations. According to The Wall Street Journal on January 19, 2007, "[p]eople familiar with the situation have said that TJX doesn't comply with those [industry] requirements." Those rules and regulations created a duty of reasonable care and a standard of care that was breached by Defendant.

29.    The breach of security was a direct and proximate result of Defendant's failure to use reasonable care to implement and maintain appropriate security procedures reasonably designed to protect the credit and debit card information and other nonpublic information of the Class. This breach of security and unauthorized access to the private nonpublic information of the Class was

8

reasonably foreseeable.

30.    Defendant was in a special fiduciary relationship with the Class by reason of its entrustment with credit and debit card information and other nonpublic information. By reason of this fiduciary relationship, Defendant had a duty of care to use reasonable means to keep the credit and debit card information and other nonpublic information of the Class private and secure. Defendant also had a duty to inform Class members in a timely manner when their credit and debit card information and other nonpublic information became compromised. Defendant has unlawfully breached these duties.

31.    Pursuant to Class members' rights to privacy, Defendant had a duty to use reasonable care to prevent the unauthorized access, use, or dissemination of the credit and debit card information and other nonpublic information. Defendant unlawfully breached this duty.

32.    The compromise of the Class' nonpublic information, and the resulting burden, fear, anxiety, emotional distress, loss of time spent seeking to prevent or undo any further harm, and other economic and non-economic damages to the Class, were the direct and proximate result of Defendant's violation of its duty of care.

33.    Defendant had a duty to timely disclose the data compromise to all customers whose credit and debit card information and other nonpublic information was, or was reasonably believed to have been, accessed by unauthorized persons. Disclosure was required so that, among other things, the affected customers could take appropriate measures to avoid unauthorized charges on their accounts, cancel or change account numbers on the compromised cards, and monitor their account information and credit reports for fraudulent charges. Defendant breached this duty by failing to notify Class members in a timely manner that their information was compromised. Class

members were harmed by Defendant's delay because, among other things, fraudulent charges have been made to Class members' accounts.

34.    Defendant had a duty to use reasonable care to destroy, and not unnecessarily store, credit and debit card information and other personal information of the Class. By the acts described herein, Defendant negligently breached this duty, and the Class was harmed thereby.

35.    Defendant knew or should have known that its network for processing and storing credit and debit card transactions and related information had security vulnerabilities. Defendant was negligent in continuing such data processing in light of those vulnerabilities and the sensitivity of the data.

36.    As a direct and proximate result of Defendant's conduct, the Class suffered damages including, but not limited to, loss of control of their credit card and other personal financial information; monetary loss for fraudulent charges incurred on their accounts; fear and apprehension of fraud, loss of money, and identity theft; the burden and cost of credit monitoring to monitor their accounts and credit history; the burden and cost of closing compromised accounts and opening new accounts; the burden of closely scrutinizing credit card statements for past and future transactions; damage to their credit history; loss of privacy; and other economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief:

A.    that this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiff and her counsel to represent the Class;

B.    that this Court enter judgment in favor of Plaintiff and the Class, and against

10

Defendant TJX under the legal theories alleged herein;

        C.     that this Court award damages under the common law theories alleged herein;

        D.     that this Court award attorneys' fees, expenses, and costs of this suit;

        E.     that this Court award Plaintiff and the Class pre-judgment and post-judgment interest at the maximum rate allowable by law; and

        F.     that this Court award such other and further relief as it may deem just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, on behalf of herself and the Class, demands a trial by jury on all issues so triable.

Dated: January 29, 2007                Respectfully Submitted,

                               STERN SHAPIRO WEISSBERG
                                 &amp; GARIN, LLP

                               Jonathan Shapiro
                               90 Canal Street
                               Boston, MA 02114-2022
                               TEL: (617) 742-5800
                               FAX: (617) 742-5858

                               BERGER & MONTAGUE, P.C.
                               Sherrie R. Savett
                               Michael T. Fantini
                               Jon Lambiras
                               1622 Locust Street
                               Philadelphia, PA 19103
                               TEL: (215) 875-3000
                               FAX: (215) 875-4636

                               Counsel for Plaintiff and the Class

412858_00.wpd                             11

Exhibit C

## United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:07-cv-10209-RWZ

Buckley et al v. TJX Companies, Inc.
Assigned to: Judge Rya W. Zobel
Related Cases: 1:07-cv-10162-WGY
                 1:07-cv-10169-JLT
Cause: No cause code entered

Date Filed: 02/02/2007
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Julie Buckley**

                              represented by **Robert E. Ditzion**
Shapiro, Haber & Urmy, LLP
53 State St.
Boston, MA 02109
617-439-3939
Fax: 617-439-0134
Email: rditzion@shulaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas G. Shapiro**
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02108
617-439-3939
Fax: 617-439-0134
Email: tshapiro@shulaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rachel Rosenfeld**

                              represented by **Robert E. Ditzion**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas G. Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kimberly Myck-Rawson**

                              represented by **Robert E. Ditzion**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas G. Shapiro**
(See above for address)
*LEAD ATTORNEY*

ATTORNEY TO BE NOTICED

**Plaintiff**

**Jitka Parment**                                represented by   **Robert E. Ditzion**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Thomas G. Shapiro**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TJX Companies, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/02/2007 | 1 | COMPLAINT *(Class Action)* against TJX Companies, Inc. Filing fee: $ 350, receipt number 1395763, filed by Julie Buckley, Rachel Rosenfeld, Kimberly Myck-Rawson, Jitka Parment. (Attachments: # 1 Civil Cover Sheet # 2 Category Sheet)(Shapiro, Thomas) (Entered: 02/02/2007) |
| 02/05/2007 |  | ELECTRONIC NOTICE of Case Assignment. Judge Rya W. Zobel assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Dein (Flaherty, Elaine) (Entered: 02/05/2007) |
| 02/05/2007 | 2 | NOTICE of Appearance by Robert E. Ditzion on behalf of Julie Buckley, Rachel Rosenfeld, Kimberly Myck-Rawson, Jitka Parment (Ditzion, Robert) (Entered: 02/05/2007) |
| 02/05/2007 |  | Summons Issued as to TJX Companies, Inc.. (Flaherty, Elaine) (Entered: 02/05/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/07/2007 11:38:25 | | |
| **PACER Login:** | wp0011 | **Client Code:** | 3204 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-10209-RWZ |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIE BUCKLEY, RACHEL ROSENFELD, KIMBERLY MYCK-RAWSON, AND JITKA PARMENT Individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>TJX COMPANIES, INC.,     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____<br>   Jury Trial Demanded |

## **Complaint**

Plaintiffs Julie Buckley, Rachel Rosenfeld, Kimberly Myck-Rawson, and Jitka

Parment (collectively "Plaintiffs"), on behalf of themselves and all others similarly

situated, allege for their complaint as follows.

## **Introduction**

1.     Defendant TJX Companies, Inc. ("Defendant" or "TJX") operates a

number of retail stores throughout the United States and overseas, including T.J. Maxx,

Marshalls, HomeGoods, Bob's Stores, and A.J. Wright stores in the U.S. and Puerto

Rico; Winners and HomeSense stores in Canada; and T.K. Maxx stores in the U.K. and

Ireland.

2.     Customers (including Plaintiffs) pay for merchandise using credit cards,

debit cards, or checks, and sometimes provide other personal information to TJX such as

driver's license numbers (which may correspond to social security numbers).  TJX takes

on the responsibility of properly securing its customers' financial and personal

information, and customers (including Plaintiffs) trust that TJX will fulfill this responsibility. Without this trust, they would not do business with TJX's stores.

3.   Instead of properly securing its customers' confidential personal and financial information, TJX left this information vulnerable to theft over its computer networks. As a result, the financial and personal information of hundreds of thousands and perhaps millions of customers (including Plaintiffs) was stolen by an unknown person or persons.

4.   Rather than immediately notify customers once it discovered the problem, TJX chose to wait until after the busy Christmas shopping season to announce the theft, further imperiling the financial security of its customers.

5.   Customers (including Plaintiffs) have been greatly inconvenienced. In some cases, their credit and debit cards have been cancelled preemptively by their financial institutions (leaving them with limited access to cash or credit). In other cases, they have noticed fraudulent charges on their cards and have been forced to contest these charges with their financial institutions. In many instances, TJX has been unhelpful in assisting customers trying to determine what has happened to their financial accounts, and has failed to take responsibility for the problems that it has caused.

6.   Of more concern than the immediate stress and inconvenience caused by compromised debit and credit card numbers is the persistent fear of identity theft. Even after publicizing the theft of information, TJX has refused to provide identity theft protection monitoring services for its customers, who are now at increased risk of identity theft.

### Jurisdiction and Venue

7.      This Court has jurisdiction to hear this case under the authority of 28 U.S.C. § 1332(d).  The amount in controversy exceeds $5,000,000.  Plaintiffs Buckley, Myck-Rawson, and Parment are each citizens of different states from Defendant.

8.      Venue is appropriate under the authority of 28 U.S.C. § 1391(a). Defendant resides in this District, and the challenged actions of Defendant took place in this District.

### Parties

9.      Plaintiff Julie Buckley is a resident of Ann Arbor, Michigan.  Her debit card account information was stolen from TJX.  She suffered damage as a result.

10.      Plaintiff Kimberly Myck-Rawson is a resident of Redmond, Oregon.  Her debit card account information was stolen from TJX.  She also believes that her credit card account information may have been stolen from TJX.  She suffered damage as a result.

11.      Plaintiff Rachel Rosenfeld is a resident of Fitchburg, Massachusetts.  Her debit card account information was stolen from TJX.  She suffered damage as a result.

12.      Plaintiff Jitka Parment is a resident of Camarillo, California.  Her credit card and debit card account information was stolen from TJX.  She suffered damage as a result.

13.      Defendant TJX is a Delaware Corporation headquartered in Massachusetts at 770 Cochituate Road, Framingham, MA 01701.  TJX is an off-price apparel and home fashions retailer with stores in the U.S. and overseas.

3

### Factual Allegations

14.     On January 17, 2007, Defendant announced publicly for the first time that it had discovered in mid-December that the personal and financial information of many of its customers had been stolen.  Data was stolen from the network that handles credit card, debit card, check, and merchandise return transactions for customers of T.J. Maxx, Marshalls, HomeGoods, and A.J. Wright stores in the U.S. and Puerto Rico; Winners and HomeSense stores in Canada; and possibly T.K. Maxx stores in the U.K. and Ireland as well as Bob's Stores in the U.S.

15.     The intrusion was discovered in mid-December, but "TJX maintained the confidentiality of this intrusion [for approximately one month] as requested by law enforcement."

16.     TJX stated that it was still unsure of the scope of the theft, but that it at least involved data from transactions in 2003 as well as from mid-May through December of 2006.  In addition to credit and debit card information, some driver's license information (which may contain social security numbers) was also stolen.

17.     TJX asserted that that it alerted law enforcement officials immediately upon discovery of the intrusion, was working with the major credit card companies to resolve any problems, and had taken measures to prevent further intrusions.

18.     TJX provided toll free contact numbers for customers and stated that it would provide more information on its Web site.  It advised customers to check their accounts for unauthorized purchases.

19.     TJX later stated on its Web site that it believes that the intrusion began in May 2006 – approximately seven months before it was discovered.

4

20.    TJX later stated on its Web site that it generally believes (but is not certain) that most (but not all) of the information stolen was credit and debit card numbers and expiration dates – and not names, addresses, or PIN numbers. This, according to TJX, means that there is little risk of identity theft. However, TJX's Web site is very clear that TJX has not yet completed its investigation. TJX acknowledges that some driver's license information (which may contain social security numbers), as well as names and addresses, were stolen.

21.    Numerous customers have requested that TJX provide identity theft monitoring services to protect them and to reduce their stress and fear of identity theft. Other companies have done this when their computer systems have been compromised, but TJX has refused to do so. According to its Web site, "Based on the type of data involved in the breach of our systems, we do not believe that such monitoring will be meaningful to customers. In other words, credit monitoring does not detect fraudulent charges on your credit and debit card accounts."

22.    According to a New York Times Article on January 19, 2007, the potential scope of the theft is vast: "Tens of millions of credit and debit cards might have been compromised by a computer security breach at the retailer that operates T. J. Maxx and Marshall's [sic] in what could emerge as the country's biggest case of stolen consumer data."

23.    An article in the Wall Street Journal on January 25, 2007 reported that TJX-related fraudulent purchases have arisen "in such faraway places as Hong Kong and Sweden. . . . Avivah Litan, a Gartner Inc. security analyst, said the scope of the fraudulent activity is 'confirmation that it's a well-organized, global ring' behind it."

24.     There are a number of industry regulations set forth by the major credit card companies, banks, and processing companies that require TJX to take specific measures to ensure the security of customer financial data.  Upon information and belief, TJX is bound by contract to follow many of these regulations. According to a Wall Street Journal article on January 19, 2007, "People familiar with the situation have said that TJX doesn't comply with those requirements."

25.     Plaintiff Buckley has been a regular customer of Defendant's stores for many years, and has used both her debit card and her driver's license when transacting business with Defendant.

26.     On January 18, 2007, she was informed that her debit card information had been stolen from Defendant and that her credit union had preemptively canceled her card, leaving her temporarily without a debit card.

27.     Plaintiff Buckley contacted Defendant over the telephone.  Defendant's employees refused to provide additional information or take responsibility for the situation or to provide any assistance other than to suggest that Plaintiff Buckley monitor her accounts herself for identity theft.  Defendant's employees refused Plaintiff Buckley's request that Defendant provide her with an identity theft monitoring service.  Plaintiff Buckley has been unable to determine whether her driver's license information was stolen from Defendant's computers.

28.     Plaintiff Myck-Rawson shopped at Defendant's T.J. Maxx store in Bend, Oregon on several occasions in the latter part of 2006.  She has used her Visa debit card and her Visa credit card when shopping at this store.

29.     Plaintiff Myck-Rawson's husband was contacted by the couple's credit union on January 19, 2007 and informed that a thief had attempted to use her debit card and that the credit union had canceled her card immediately.

30.     Plaintiff Myck-Rawson contacted her credit union and was told that a local merchant's computer system had been compromised and her financial information had been stolen. However, the credit union stated that, at the request of Visa, it would not reveal the name of the merchant. After several emotionally stressful days of attempting to learn more information from Visa and from her credit union, Plaintiff Myck-Rawson was finally informed by her credit union that the local merchant was T.J. Maxx.

31.     Plaintiff Myck-Rawson was unable to conduct certain financial transactions or to obtain cash from ATM machines until she received a new debit card.

32.     Because Plaintiff Myck-Rawson also used her Visa credit card at Defendant's store, she has canceled that card and will receive a replacement. This process has caused her further inconvenience.

33.     Plaintiff Rachel Rosenfeld shopped at Defendant's Marshalls Store in the latter part of 2006. She used her Visa debit card to make purchases at this store.

34.     Plaintiff Rosenfeld was contacted by her credit union in a letter dated January 17, 2007 and informed that her Visa card number was at risk due to an unspecified "network intrusion that has put certain Visa accounts numbers at risk. The reported incident involves confirmed unauthorized access to a merchant's transaction processing data-center, which exposed customer information that included Visa account numbers and expiration dates." Plaintiff Rosenfeld was issued a new debit card, and her

7

old card was canceled as of January 31, 2007. Her credit union advised her that she should carefully review her accounts for unauthorized transactions. After making efforts on her own, she was finally later able to confirm with her credit union that the "intrusion" was at TJX.

35.    Plaintiff Jitka Parment shops frequently at Defendant's Marshalls, T.J. Maxx and HomeGoods stores, and specifically made purchases with her MasterCard there in May and June of 2006.

36.    In January, Plaintiff Parment was attempting to make a retail purchase when her MasterCard was rejected. Although she was able to make the purchase with a different card, the incident caused her great embarrassment.

37.    Plaintiff Parment was informed by her credit card company that several hundred dollars of online purchases had been made on her card, and, because she does not typically shop online, the card company had flagged her account. The company ultimately cancelled her account and issued her a new card. Plaintiff Parment is now in the (potentially lengthy) process of having to challenge these online purchases, which she did not make. These charges occurred in on December 18, 2006. TJX states that it discovered the intrusion into its computer system in "mid-December." It is possible that if Defendant had announced the theft immediately, Plaintiff Parment might have been able to cancel her card before these charges were incurred.

38.    Because Plaintiff Parment has used her MasterCard at Defendant's stores, and has no knowledge of any other likely way that her card information was otherwise compromised, she believes that her card information was stolen from Defendant.

39.     Plaintiff Parment separately received a letter from her credit union that her Visa debit card "may have been comprised in a recent nationwide breach of card information involving TJX Companies, Inc."  While no fraudulent charges had been made, the credit union issued her a new card and canceled her old card, which was an inconvenience to Plaintiff Parment.

40.     Plaintiffs have had to expend a great deal of time and effort as a result of the theft of their debit card information.  Plaintiffs are extremely concerned that their identities might be stolen as a result of their personal information having been stolen from Defendant.

<u>**Class Action Allegations**</u>

41.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

42.     Plaintiffs bring this action both in their individual capacity, and as a class action against Defendant on behalf of a Class consisting of all individuals in the United States whose personal or financial data was stolen, or cannot definitively be determined not to have been stolen, from TJX as a result of the conduct described herein.  Excluded from the Class are any Judge or Special Master who had credit card or other personal information on file at TJX.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least a hundred thousand members in the proposed Class.

44.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the members of the Class have been damaged by the same wrongful conduct committed by Defendant, as alleged herein. Plaintiffs and all members of the Class had their personal or financial information stolen from Defendant in the same manner as alleged herein.

45.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in the prosecution of complex class action litigation. The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    Whether Defendant took proper measures to safeguard the personal and financial data of Plaintiffs and the Class;

b.    Whether Defendant notified Plaintiffs and the Class of the theft of their data in a sufficiently complete and timely manner;

c.    Whether Defendant owed the legal duties discussed herein to Plaintiffs and the Class and whether Defendant breached these duties;

d.    Whether Plaintiffs and the members of the Class have sustained damages and, if so, what is the proper measure of those damages; and

e.    Whether Plaintiffs and the members of the Class are entitled to the relief sought, including injunctive relief and attorneys' fees.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## Count I: Negligence

48.     Plaintiffs reallege and incorporate by reference the allegations in all preceding paragraphs as if fully set forth herein.

49.     Defendant owed Plaintiffs and the Class a duty to protect their private personal and financial information and to promptly and completely disclose any theft of such information.

50.     Defendant failed to take adequate measures to safeguard this information, and, upon information and belief, specifically failed to follow standard industry rules and regulations governing the protection of this information.

51.     Given a number of recent similar high profile data thefts at other companies, TJX was clearly aware of the need to protect its customers' personal and financial information.

52.     Defendant failed to promptly and completely disclose the theft of this information, which would have allowed Plaintiffs and the Class to limit their damages.

53.     As a result of Defendant's breach of its duties, Plaintiffs and the Class have been harmed.

11

## Count II: Breach of Contract

54.     Plaintiffs reallege and incorporate by reference the allegations in all preceding paragraphs as if fully set forth herein.

55.     When providing personal and financial information to Defendant in order to transact business at Defendant's retail stores, Plaintiffs and the Class entered into implied contracts with Defendant that Defendant would safeguard this information and notify them promptly of any and all theft of this information.

56.     Without such implied contracts, customers (including Plaintiffs and the Class) would not have used their personal and financial information to transact business with Defendant.

57.     Additionally, upon information and belief, Plaintiffs and the Class are third party beneficiaries of contracts between Defendant and financial institutions that process credit and debit cards for Defendant.  These contracts require that Defendant safeguard the personal and financial information of Plaintiffs and the Class.

58.     Defendant breached these contracts, and, as a result of these breaches, Plaintiffs and the Class have been harmed as alleged herein.

## Count III: Bailment

59.     Plaintiffs reallege and incorporate by reference the allegations in all preceding paragraphs as if fully set forth herein.

60.     Plaintiffs and the Class delivered and entrusted their personal and financial information to Defendant for the mutual benefit of facilitating the transaction of business at Defendant's stores.

61.     Implied in the terms of this bailment was that Defendant was only permitted to store this information for the amount of time necessary to complete any transactions made.  After this time, Defendant was obligated to destroy this information.  However, upon information and belief, Defendant kept this information longer than necessary for this purpose.

62.     During the time of bailment, Defendant owed Plaintiffs and the Class a duty to properly safeguard this information and notify them promptly of any and all theft of this information.  Defendant breached this duty.

63.     As a result of these breaches of duty, Plaintiffs and the Class have been harmed as alleged herein.

### Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray that this Court:

A. Certify a Class as described herein under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as Class Representatives;

B. Order that Defendant compensate Plaintiffs and the Class for all damages suffered from the conduct alleged herein;

C. Order that Defendant create a fund to compensate Plaintiffs and the Class for future damages not yet suffered from the conduct alleged herein;

D. Grant injunctive relief, including the provision of identity theft monitoring services for Plaintiffs and the Class;

E. Award Plaintiffs and the Class their attorneys' fees, expenses, and costs;

F. Grant additional legal or equitable relief as this Court may find just and proper.

## Jury Demand

Plaintiffs demand a trial by jury for all claims so triable.

Dated: February 2, 2007                    By their attorneys,

Thomas G. Shapiro, BBO #454680
Robert E. Ditzion, BBO # 660962
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
(617) 439-3939

Lester L. Levy
Emily Madoff
Wolf Popper LLP
845 Third Avenue
New York, NY 10022
(212) 759-4600

**Exhibit D**

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:07-cv-10217-WGY

Gaydos v. TJX Companies, Inc. et al
Assigned to: Judge William G. Young
Demand: $5,000,000,000
Cause: 28:1391 Personal Injury

Date Filed: 02/05/2007
Jury Demand: Plaintiff
Nature of Suit: 380 Personal Property: Other
Jurisdiction: Diversity

**Plaintiff**

**Thomas J. Gaydos**

represented by **Jonathan Shapiro**
Stern, Shapiro, Weissberg & Garin
Suite 500
90 Canal Street
Boston, MA 02114-2022
617-742-5800
Fax: 617-742-5858
Email: jshapiro@sswg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TJX Companies, Inc.**

**Defendant**

**Fifth Third Bancorp**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/05/2007 | 1 | COMPLAINT against TJX Companies, Inc. , filed by Thomas J. Gaydos. (Attachments: # 1)(Flaherty, Elaine) (Entered: 02/05/2007) |
| 02/05/2007 | | ELECTRONIC NOTICE of Case Assignment. Judge Patti B. Saris assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Dein (Flaherty, Elaine) (Entered: 02/05/2007) |
| 02/05/2007 | | Filing fee: $ 350., receipt number 78020 for 1 Complaint (Flaherty, Elaine) (Entered: 02/05/2007) |
| 02/05/2007 | | Summons Issued as to TJX Companies, Inc., Fifth Third Bancorp. (Flaherty, Elaine) (Entered: 02/05/2007) |
| 02/06/2007 | | ELECTRONIC NOTICE of Reassignment. Judge William G. Young added. Judge Patti B. Saris no longer assigned to case. Case originally assigned to Judge Young as related to CA 07-10162-WGY, but incorrect |

|  |  | district judge inadvertently added to case at case opening. (Hurley, Virginia) (Entered: 02/06/2007) |
|--|--|--|

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/07/2007 10:19:38 | | |
| **PACER Login:** | wp0011 | **Client Code:** | 3030 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-10217-WGY |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

07 CA 10.21.5 WGY

78020

350

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ATTORNEYS ___
SUMMONS ISSUED ___
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY CLK. ___
DATE _____

07 CA 10.21.2 WGY

THOMAS J. GAYDOS, on behalf of himself
and all others similarly situated,

                              Plaintiff,

       v.

TJX COMPANIES, INC., and
FIFTH THIRD BANCORP

                              Defendant.

Civil Action No: _____

COMPLAINT - CLASS ACTION

JURY TRIAL DEMANDED

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Thomas J. Gaydos ("Plaintiff") hereby brings this class action suit against TJX

Companies, Inc. ("TJX" or the "Company") and Fifth Third Bancorp (collectively "Defendants").

Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff

and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which

included, inter alia, review and analysis of Defendants' websites and a TJX press release, and

various news articles.

## NATURE OF THIS ACTION

1.     Plaintiff brings this class action suit on his own behalf and on behalf of all other

persons or entities in the United States against TJX and Fifth Third Bancorp to redress Defendants'

failure to adequately safeguard certain credit card and debit card information and related data. More

specifically, this action arises from Defendants' failure to maintain adequate computer data security

of customer credit and debit card data, which was accessed and stolen by a computer hacker. As a

result of Defendants' wrongful actions, customer information was stolen from TJX's computer

network that handles a wide range of financial information for millions of customers, including

credit cards, debit cards linked to checking accounts, and transactions for returned merchandise. Because of Defendants' actions, hundreds of thousands or even millions of its customers have had their personal financial information compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identity theft, and have otherwise suffered damages.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1332(d), as the matter in controversy exceeds $5 million, Plaintiff has diverse citizenship from Defendants, and there are more than 100 class members.

3.      Venue properly lies in this District pursuant to 28 U.S.C. §1391(a)(2), since the cause of action arose in this District, and the unlawful conduct of Defendants, out of which the cause of action arose, took place in this District.

## PARTIES

4.      Plaintiff Thomas J. Gaydos resides in King of Prussia, Pennsylvania.  Plaintiff Gaydos' Visa Check Card information was stolen from TJX's computer system, and he has been damaged as a result.

5.      Defendant TJX is a Delaware corporation with its headquarters at 770 Cochituate Road, Framingham, Massachusetts, 01701.  TJX operates retail chains in Massachusetts and throughout the United States.

6.      Defendant Fifth Third Bancorp is incorporated in Ohio with its headquarters at 38 Fountain Square Plaza, Cincinnati, Ohio, 45263.  Fifth Third Bancorp is the nation's fourth largest credit card processor, and has more than $100 billion in assets.  Fifth Third Bancorp is the sponsoring bank that handled TJX's credit card transactions during the relevant period.

2

## OPERATIVE FACTS

7.      TJX purports to be the leading off-price apparel and home fashion retailer in the

United States and worldwide, with $16 billion in revenues in 2005.  Its stock trades on the New

York Stock Exchange under the symbol TJX.  TJX operates more than 2,300 retail stores under such

chains as T.J. Maxx, Marshalls, HomeGoods, A.J. Wright, and Bob's Stores.  These stores are

located across the United States.

8.      On January 17, 2007, TJX first publicly announced that it had been hit by a wide-

reaching security breach that may leave millions of its customers around the world exposed to fraud

and identity theft from transactions that date back to 2003.  TJX's press release stated, in relevant

part:

> The TJX Companies, Inc. (NYSE:TJX) today announced that it has suffered
> an unauthorized intrusion into its computer systems that process and store
> information related to customer transactions. While TJX has specifically identified
> some customer information that has been stolen from its systems, the full extent of
> the theft and affected customers is not yet known. This intrusion involves the portion
> of TJX's computer network that handles credit card, debit card, check, and
> merchandise return transactions for customers of its T.J. Maxx, Marshalls,
> HomeGoods and A.J. Wright stores in the U.S. and Puerto Rico, and its Winners and
> HomeSense stores in Canada, and may involve customers of its T.K. Maxx stores in
> the U.K. and Ireland. The intrusion could also extend to TJX's Bob's Stores in the
> U.S.
>
> . . .
>
> Through its investigation, TJX has learned the following with respect to the
> intrusion:
>
> •      An unauthorized intruder accessed TJX's computer systems that process and
>        store information related to customer transactions for its T.J. Maxx,
>        Marshalls, HomeGoods and A.J. Wright stores in the U.S. and Puerto Rico
>        and its Winners and HomeSense stores in Canada.
>
> •      . . . . It is possible that the intrusion may extend to Bob's Stores.

3

- Portions of the information stored in the affected part of TJX's network regarding credit and debit card sales transactions in TJX's stores (excluding Bob's Stores) in the U.S., Canada, and Puerto Rico during 2003, as well as such information for these stores for the period from mid-May through December, 2006 may have been accessed in the intrusion. TJX has provided the credit card companies and issuing banks with information on these and other transactions.

- To date, TJX has been able to specifically identify a limited number of credit card and debit card holders whose information was removed from its system and is providing this information to the credit card companies. In addition, TJX has been able to specifically identify a relatively small number of customer names with related drivers' license numbers that were also removed from its system, and TJX is contacting these individuals directly.

- TJX is continuing its investigation seeking to determine whether additional customer information may have been compromised. TJX does not know if it will be able to identify additional information of specific customers that may have been taken.

9.    TJX's press release also stated that TJX discovered the intrusion in "mid-December, 2006." Nevertheless, TJX did not announce the intrusion until approximately one month later, when it issued its January 17, 2007 press release.

10.    TJX's press release further stated that after the security breach occurred, the Company "significantly strengthened the security of its computer systems." The Company did not specify the nature of the improvements.

11.    On its website, in a section titled "Frequently Asked Questions" concerning the security breach, TJX stated that the drivers' license numbers that were stolen were received in transactions where merchandise was returned without receipts. The Company alluded to the possibility that some customers' drivers' license numbers may be the same as their social security numbers.

12.    On January 18, 2007, The Wall Street Journal reported that "people familiar with the

4

matter said the number of exposed cards could exceed the 40 million that were made vulnerable to fraud nearly two years ago in a breach involving CardSystems Solutions, Inc."

13.     On January 19, 2007, The Wall Street Journal reported that the security breach "exposed millions of consumers to potential fraud." It reiterated that the number of exposed cards could exceed 40 million, citing representatives from Visa. The article also stated that "'patterns of counterfeit fraud have been reported on some of the affected accounts,'" quoting a letter from Visa.

14.     The January 19, 2007 Wall Street Journal article also stated that U.S. retailers including TJX are required to follow "stringent card-industry rules," described as follows:

> The rules that cover transactions on cards branded with logos from Visa, MasterCard International Inc., American Express Co. and Discover Financial Services, require merchants to validate a series of security measures, such as the establishment of firewalls to protect databases. Among other things, merchants are prohibited from storing unprotected cardholder information.

> . . .

> People familiar with the situation have said that TJX doesn't comply with those requirements.

15.     On January 25, 2007, The Wall Street Journal reported that fraudulent purchases using credit and debit card numbers stolen from TJX already surfaced in several states. Hundreds of thousands of customer accounts have been affected. One TJX customer said that about $6,700 in unauthorized transactions were made with his card account number during a 10 hour period in early January 2007.

16.     Fifth Third Bancorp is the sponsoring bank that handles TJX's credit card transactions. In that role, Fifth Third Bancorp carries out transactions that begin at the checkout counter, pass through card association networks - such as those of Visa or Mastercard - go to the cardholder's issuing bank for approval, and end with the printout of a purchase receipt for the

customer to sign.

17.     As the sponsoring bank that handles TJX's accounts, Fifth Third Bancorp is "responsible for ensuring that the retailer [TJX] met the industry's data security standards," according to a New York Times article dated January 19, 2007. Fifth Third Bancorp had a duty to ensure that TJX met applicable industry data security standards, and Fifth Third Bancorp breached that duty.

18.     Referencing Fifth Third Bancorp, The Wall Street Journal reported on January 19, 2007 that "TJX Cos. might not be the only company on the hook for a security breach that has exposed millions of consumers to potential fraud." The article pointed out that because of Fifth Third Bancorp's involvement with credit card processing at TJX, "[b]ased on card-industry rules, that means Fifth Third likely will be first in line if Visa USA Inc. and MasterCard Inc. levy fines for the [TJX] breach."

19.     The security breach at TJX is currently being investigated by the Federal Bureau of Investigation, the U.S. Attorney's Office in Boston, and other law enforcement agencies.

20.     Plaintiff Thomas Gaydos used his Visa Check Card at Marshalls from May 2006 to December 2006, and most likely in 2003 as well. He first noticed a problem with his card on January 27, 2007. On that date he attempted to withdraw funds from an ATM machine but was only permitted to withdraw $20, an amount less than he needed. He subsequently tried to withdraw funds from another ATM machine but received a message that his account had been deactivated.

21.     Plaintiff Gaydos called his bank, Bank of America, and was told that two fraudulent Western Union transactions were attempted on his card. The bank flagged the transactions as possibly being fraudulent, and restricted his card until it was ultimately deactivated. Plaintiff

Gaydos went to a Bank of America branch to discuss the matter further. He was told that the card compromise was likely related to TJX's security breach because the pattern of fraudulent activity on his account was consistent with fraudulent activity affecting other cardholders whose cards were compromised by TJX's security breach.

22.     Plaintiff Gaydos is awaiting receipt of a replacement card in the mail. Because of the time lag required to process and deliver a new card, he has had to update several automatic payments to link them to an alternate funding source such as PayPal. This was time consuming and a considerable inconvenience.

23.     Plaintiff Gaydos had limited or no use of his card from the date it was first restricted to the present, a period of nearly one week. He will continue to have no use of the card until his replacement card is received in the mail. This is a considerable inconvenience because he has no other debit or credit cards to use.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this class action, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of himself and all others similarly situated, consisting of all persons or entities in the United States who have had personal or financial data stolen from TJX's computer network, and who were damaged thereby (the "Class"). The Class does not include Defendants, or their officers, directors, agents, or employees.

25.     The Class consists of hundreds of thousands, and possibly millions, of customers of TJX's retail stores located throughout Massachusetts and the United States. While the exact number of Class members and the identities of individual Class members are unknown at this time, and can only be ascertained through appropriate discovery, based on the fact that hundreds of thousands of

7

customer accounts have already been affected, the Class is so numerous that joinder of all Class members is impracticable.

26.     Defendants' conduct affected all Class members in the same way.  Defendants' conduct in failing to properly safeguard customers' personal and financial data and in failing to notify customers of the security breach as soon as practical after the breach was discovered is uniform among the Class.

27.     Questions of law and fact common to all Class members predominate over any questions affecting only individual members.  Such questions of law and fact common to the Class include:

        a.     whether Defendants acted wrongfully by failing to properly safeguard customers' financial data;

        b.     whether Defendants failed to notify Class members of the security breach as soon as practical after the breach was discovered; and

        c.     whether Plaintiff and the Class have been damaged, and, if so, what is the appropriate relief as to each member of the Class.

28.     Plaintiff's claims, as described herein, are typical of the claims of all Class members, as the claims of Plaintiff and all Class members arise from the same set of facts regarding Defendants' failure to protect Class members' financial data.  Plaintiff maintains no interests that are antagonistic to the interests of other Class members.

29.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions of this type.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests

of the Class.

30.    This class action is a fair and efficient method of adjudicating the claim of Plaintiff and the Class for the following reasons:

a.    common questions of law and fact predominate over any question affecting any individual Class member;

b.    the prosecution of separate actions by individual members of the Class would likely create a risk of inconsistent or varying adjudications with respect to individual members of the Class thereby establishing incompatible standards of conduct for Defendants or would allow some Class members' claims to adversely affect other Class members' ability to protect their interests;

c.    this forum is appropriate for litigation of this action since the cause of action arose in this District;

d.    Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

e.    the Class is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress for claims that may be too small to support the expense of individual, complex litigation.

31.    For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

## NEGLIGENCE

## (As To All Defendants)

9

32.   Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

33.   Defendant TJX assumed a duty to use reasonable care to keep the credit card and other nonpublic information of the Class that is, or was, in its possession and control private and secure. By its acts and omissions described herein, TJX unlawfully breached this duty. The Class was damaged thereby.

34.   The private financial information of the Class that was compromised by the breach of TJX's security included, without limitation, information that was being improperly stored and inadequately safeguarded in violation of, among other things, industry rules and regulations. According to The Wall Street Journal on January 19, 2007, "[p]eople familiar with the situation have said that TJX doesn't comply with those [industry] requirements." Those rules and regulations created a duty of reasonable care and a standard of care that was breached by TJX.

35.   According to The New York Times on January 19, 2007, Defendant Fifth Third Bank is the "sponsoring bank that handles TJX's accounts, which makes it responsible for ensuring that the retailer met the industry's data security standards." Fifth Third Bancorp breached its duty to ensure TJX met applicable industry security standards.

36.   The breach of security was a direct and proximate result of Defendants' failure to use reasonable care to implement and maintain appropriate security procedures reasonably designed to protect the credit and debit card information and other nonpublic information of the Class. This breach of security and unauthorized access to the private nonpublic information of the Class was reasonably foreseeable.

37.   Defendants were in a special fiduciary relationship with the Class by reason of their

10

entrustment with credit and debit card information and other nonpublic information. By reason of this fiduciary relationship, Defendants had a duty of care to use reasonable means to keep the credit and debit card information and other nonpublic information of the Class private and secure. Defendants also had a duty to inform Class members in a timely manner when their credit and debit card information and other nonpublic information became compromised. Defendants unlawfully breached these duties.

38.    Pursuant to Class members' rights to privacy, Defendants had a duty to use reasonable care to prevent the unauthorized access, use, or dissemination of the credit and debit card information and other nonpublic information. Defendants unlawfully breached this duty.

39.    The compromise of the Class' nonpublic information, and the resulting burden, fear, anxiety, emotional distress, loss of time spent seeking to prevent or undo any further harm, and other economic and non-economic damages to the Class, were the direct and proximate result of Defendants' violations of their duty of care.

40.    Defendants had a duty to timely disclose the data compromise to all customers whose credit and debit card information and other nonpublic information was, or was reasonably believed to have been, accessed by unauthorized persons. Disclosure was required so that, among other things, the affected customers could take appropriate measures to avoid unauthorized charges on their accounts, cancel or change account numbers on the compromised cards, and monitor their account information and credit reports for fraudulent charges. Defendants breached this duty by failing to notify Class members in a timely manner that their information was compromised. Class members were harmed by Defendants' delay because, among other things, fraudulent charges have been made to Class members' accounts.

41.    Defendants had a duty to use reasonable care to destroy, and not unnecessarily store,

credit and debit card information and other personal information of the Class. By the acts described herein, Defendants negligently breached this duty, and the Class was harmed thereby.

42.     Defendants knew or should have known that TJX's network for processing and storing credit and debit card transactions and related information had security vulnerabilities. Defendants were negligent in continuing such data processing in light of those vulnerabilities and the sensitivity of the data.

43.     As a direct and proximate result of Defendants' conduct, the Class suffered damages including, but not limited to, loss of control of their credit card and other personal financial information; monetary loss for fraudulent charges incurred on their accounts; fear and apprehension of fraud, loss of money, and identity theft; the burden and cost of credit monitoring to monitor their accounts and credit history; the burden and cost of closing compromised accounts and opening new accounts; the burden of closely scrutinizing credit card statements for past and future transactions; damage to their credit history; loss of privacy; and other economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief:

A.     that this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiff and his counsel to represent the Class;

B.     that this Court enter judgment in favor of Plaintiff and the Class, and against Defendants under the legal theories alleged herein;

C.     that this Court award damages under the common law theories alleged herein;

D.     that this Court award attorneys' fees, expenses, and costs of this suit;

E.     that this Court award Plaintiff and the Class pre-judgment and post-judgment

12

interest at the maximum rate allowable by law; and

        F.    that this Court award such other and further relief as it may deem just and

appropriate.

<u>**JURY TRIAL DEMAND**</u>

Plaintiff, on behalf of himself and the Class, demands a trial by jury on all issues so triable.

Dated: February 5, 2007

        Respectfully Submitted,

        STERN SHAPIRO WEISSBERG
          & GARIN, LLP

        Jonathan Shapiro
        90 Canal Street
        Boston, MA 02114-2022
        TEL: (617) 742-5800
        FAX: (617) 742-5858

        BERGER & MONTAGUE, P.C.
        Sherrie R. Savett
        Michael T. Fantini
        Jon Lambiras
        1622 Locust Street
        Philadelphia, PA 19103
        TEL: (215) 875-3000
        FAX: (215) 875-4636

        MAGER & GOLDSTEIN, LLP
        Carol A. Mager
        One Liberty Place, 21st Floor
        1650 Market Street
        Philadelphia, PA 19103
        TEL: (215) 640-3280
        FAX: (215) 640-3281

        Counsel for Plaintiff and the Class

413129_03.wpd

Exhibit E

## United States District Court
### District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:07-cv-10169-JLT

| | |
|---|---|
| Amerifirst Bank v. TJX Companies, Inc. et al | Date Filed: 01/29/2007 |
| Assigned to: Judge Joseph L. Tauro | Jury Demand: None |
| Related Case: 1:07-cv-10209-RWZ | Nature of Suit: 370 Fraud or Truth-In-Lending |
| Cause: 28:1332 Diversity-Fraud | Jurisdiction: Diversity |

**Plaintiff**

**Amerifirst Bank**
*Individually and on behalf of a class similarly
situated entities*

represented by **Patrick Sheehan**
Whatley Drake & Kallas
1540 Broadway
37th Floor
New York, NY 10036
US
212-447-7070
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TJX Companies, Inc.**

**Defendant**

**TJ Maxx**

**Defendant**

**Fifth Third Bancorp**

**Defendant**

**Fifth Third Bank**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/29/2007 | 1 | COMPLAINT against TJX Companies, Inc., TJ Maxx, Fifth Third Bancorp, Fifth Third Bank , filed by Amerifirst Bank. (Attachments: # 1 Civil Cover Sheet # 2 Category Sheet)(Boyce, Kathy) (Entered: 01/30/2007) |
| 01/29/2007 | 2 | Request for Service by Certified Mail, FILED. (Boyce, Kathy) (Entered: 01/30/2007) |
| 01/30/2007 | | ELECTRONIC NOTICE of Case Assignment. Judge Joseph L. Tauro assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Alexander (Boyce, Kathy) (Entered: 01/30/2007) |
| 01/30/2007 | | Summons Issued as to TJX Companies, Inc., TJ Maxx, Fifth Third Bancorp, Fifth Third Bank. (Boyce, Kathy) (Entered: 01/30/2007) |
| 01/30/2007 | | Filing fee: $350.00, receipt number 77923 for 1 Complaint (Boyce, Kathy) (Entered: |

Case MDL No. 1838   Document 1   Filed 02/15/07   Page 86 of 112

01/30/2007)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/07/2007 11:35:50 | | | |
| **PACER Login:** | wp0011 | **Client Code:** | 3204 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-10169-JLT |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
AMERIFIRST BANK,                    )
Individually and on behalf of a class  )
similarly situated entities,        )
                                    )
            Plaintiffs,             )
                                    )
vs.                                 )    Civil Action No.
                                    )
TJX COMPANIES, Inc.,                )
TJ MAXX,                            )
FIFTH THIRD BANCORP and             )
FIFTH THIRD BANK,                   )
                                    )
            Defendants.             )
```

0 7  CA  1 0 1 6 9  JLT

### Class Action Complaint

The Plaintiffs, individually and on behalf of a class of similarly situated persons,

complain against the Defendants as follows:

### Introduction

1.  Plaintiffs bring this action individually and on behalf of a class of

similarly situated class members for injuries suffered as a result of Defendants' wrongful

conduct.  In what has recently been described as potentially the largest retail security

breach to have ever occurred in the United States, the Defendant TJX Companies, Inc.

(hereinafter TJX) announced on January 17, 2007 that an outside consultant had detected

an unauthorized intrusion into its computer systems that process and store information

related to customer transactions.  This intrusion involved portions of TJX's computer

network that handles credit card, debit card, check and merchandise return transactions

for customers of its T.J. Maxx, Marshalls, HomeGoods, Bob's Stores and A.J. Wright

stores in the United States and Puerto Rico. According to TJX's press release, the intrusion involved credit and debit card transactions occurring in 2003 and most recently for the period from mid-May through December, 2006. Additionally, what makes the intrusion into the TJX computer system particularly alarming is that the breach involved customer information such as drivers' license and checking accounts linked to transactions for returned merchandise and was not limited to credit and debit card information.

  2. Though Defendants apparently learned of the intrusion in mid-December, 2006, they delayed announcing the matter for approximately one-month. The delay in announcing the intrusion exposed the Plaintiff and class members to further harm arising from fraudulent transactions.

  3. This case arose because the Defendants have both statutory and common law duties to adequately protect their customers' non-public and private financial information. The Defendants breached the duties owed to its customers by failing to maintain adequate computer data security. Moreover, the Defendant TJX likely retained customer information for a longer period of time than allowed under current payment system industry standards. The current standard is that once the transaction has been completed, the merchant and/or acquiring bank are supposed to purge the information from their system. Given the well-publicized breaches in 2005 involving CardSystems Solutions, the Defendants should have undertaken adequate measures to thwart and/or detect intrusions into their computer systems.

**Parties & Venue**

4.     The plaintiff AmeriFirst Bank has its principal place of business in the State of Alabama.   It's main offices are located in Union Springs, Alabama.

5.     The defendant TJX, Inc. is incorporated in the State of Massachusetts. TJX is an off price retailer of apparel and home fashions.   TJX regularly transacts business throughout the United States, including the State of Alabama.

6.     The defendants Fifth Third Bancorp and Fifth Third Bank (hereinafter Fifth Third Bank) are charted in the State of Ohio.   Upon information and belief, Fifth Third Bank is the sponsoring bank that handled TJX's credit card accounts.   Fifth Third Bank is the nation's fourth largest credit card processor.   The Defendant Fifth Third Bancorp is the parent of Fifth Third Bank.

7.     The defendant TJ MAXX is incorporated in the State of Massachusetts. TJ MAXX is an off price retailer of apparel and home fashions.   TJ MAXX regularly transacts business throughout the United States, including the State of Alabama.

**Jurisdiction**

8.     This Court has diversity jurisdiction over the claims asserted in the complaint.   The amount in controversy exceeds $75,000 and there exists complete diversity with respect to the named parties.   Additionally, the Court has jurisdiction under the Class Action Fairness Act because this class has more than 100 hundred persons and the amount at issue exceeds five (5) million dollars.

3

### Factual Allegations

9.     On January 17, 2007, TJX announced that its computer system had been compromised and that the intrusion resulted in the theft of private financial data related customer transactions. TJX further stated that it has identified customer information that has been stolen from its systems. Other than the initial announcement TJX has provided very little information about the scope and extent of the security breach. TJX has stated that it does not know the full extent of the intrusion and has refused to say how many customers had their data stolen or accessed by the breach. However, according to Visa the number of cards accessed in this case could exceed the forty (40) million cards exposed in a 2005 breach of computers at payment processor CardSystems Solutions.

10.     The Plaintiff AmeriFirst Bank (AmeriFirst) is a retail bank, offering traditional financial services to its customers, including commercial, mortgage and consumer installment lending. As a result of the TJX intrusion, AmeriFirst has identified 150 customers with compromised credit/debit cards. It will have to reissue cards to these customers at an approximate cost of $20.00 per card.

11.     Upon information and belief, Fifth Third Bank processed credit card and debit card transactions for TJX. Fifth Third Bank served in the capacity as the acquiring bank (or the merchant acquirer). As the merchant acquirer, Fifth Third Bank takes the credit card transactions from TJX and transmits them to the bank issuing the card. Once the cardholder bank (the issuing bank) authorizes payment, Fifth Third Bank credits TJX's merchant account with the purchase price minus transactions fees.

12.     Although U.S. retailers who accept credit cards and the merchant acquirers are required to abide by card-industry regulations governing credit card

4

transactions, many merchants don't comply with them. The rules that cover transactions on cards branded with logos from Visa, MasterCard International Inc., American Express Co. and Discover Financial Services, require merchants to validate a series of security measures, such as the establishment of firewalls to protect databases.

13.     Among other things, merchants are prohibited from storing unprotected cardholder information. According to the Wall Street Journal On-Line, Visa has reported that only 31% comply with card industry requirements. Upon information and belief, TJX did not comply with card industry regulations and/or statutory requirements aimed at protecting privated financial information. Upon information and belief, TJX maintained unprotected cardholder information on its computer system and retained such information for longer periods than allowed under current industry standards.

14.     Moreover, as member of the Visa and MasterCard networks, the Fifth Third BanK as the merchant acquirer was obligated to ensure that the TJX's computer system complied with statutory requirements and/or card industry regulations.

### Class Allegations

15.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated pursuant to Rule 23 of the *Federal Rules of Civil Procedure*. Plaintiffs seek certification of a class under Rule 23(b)(1), (b)(2) and (b)(3).

16.     Class definition: The class that Plaintiffs seek to represent is defined as follows:

> All financial institutions that issued credit cards and/or debit cards to its customers that were used at any of TJX's outlets and/or stores during the period of the security breach.

5

17.    Numerosity:   The class is composed of thousands of financial institutions the joinder of which would be impracticable.   The individual identities of the class members are ascertainable through Defendants' records or by public notice.

18.    Commonality: There is a well-defined community of interest in the questions of law and fact involved affecting the members of the class.  The questions of law and fact common to the class predominate over questions affect only individual class members, and include, but are not limited to, the following:

a.    Whether Defendants TJX and First Third Bank breached a duty and were negligent in failing to keep card members' account, transactions, and other non-public information secure and/or by failing to comply with payment card industry standards;

b.    Whether all Defendants, or any of them, breached duties and/or were negligent in failing to inform directly or indirectly in a timely fashion the financial institutions that issued credit/debit cards (the security of whose accounts or other non-public information was compromised) of the occurrence of such a compromise of security;

c.    Whether the class is entitled to notice as to whether the security of their credit/debit card account or other non-public information was compromised as a result of a breach of security at TJX;

d.    Whether the class is entitled to remedies such as covering the cost of replacing cards on account of the breach of duties of Defendants, or the losses resulting from fraudulent transactions;

e.    Whether the class is entitled to declaratory relief;

6

f.    Whether the class is entitled to injunctive relief; and,

g.    Whether the class is entitled to an award of reasonable attorneys' fees and costs of suit.

19.    <u>Typicality and Adequacy</u>: Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class members they seek to represent and they are similarly situated with members of their class. Plaintiffs will fairly and adequately represent and protect the interests of the class, and Plaintiffs' interests are not antagonistic to the class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

20.    <u>Predominance</u>: Common questions of fact or law predominate over individualized issues. Because this case centers on the Defendants' failure to adequately secure non-public financial information (i.e. credit and debit card information), the facts surrounding the Defendants' practices will clearly predominate over any individualized issues. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and class members' claims. Plaintiffs and the members of the class have suffered irreparable harm as a result of Defendants unfair, deceptive and unlawful conduct. Defendants continue to deny wrongdoing and to engage in the unfair, unlawful, and deceptive conduct that is the subject of this complaint.

### **COUNT I**

#### **(Negligence)**

21.    The Plaintiffs incorporate by reference and restate the factual allegations in the preceding paragraphs.

22. The Defendants came into possession of private financial information and had a duty to adequately protect it from theft. The Defendants did not exercise reasonable care in safeguarding such information. Defendants did not comply with industry standards designed to protect credit and debit card information from theft and/or prevent others from gaining access to such information.

23. The Defendants negligently delayed disclosure of the security breach thus unreasonably exposing the plaintiffs and/or class members to harm and injury.

24. Plaintiffs and the class have been injured as a proximate result of these breaches and Defendants' conduct constitutes negligence.

## COUNT II

### (Breach of Contract)

25. The Plaintiffs incorporate by reference and restate the factual allegations in the preceding paragraphs.

26. The plaintiffs, class members and defendants were parties to a contract that required the defendants to adequately protect credit card, debit card and other personal information from theft or unauthorized disclosure.

27. Alternatively, the plaintiffs and class members were third party beneficiaries to contracts and/or agreements that the defendants entered into with credit card associations/networks. These agreements required the defendants to adequately safeguard credit card, debit card and/or other personal information from theft or unauthorized disclosure.

8

28.     The defendants breached their agreements with the plaintiffs and/or class members by failing to adequate safeguard plaintiffs and class members private financial information.

29.     Plaintiffs and the class have been injured as a proximate result of these breaches and Defendants' conduct constitutes a breach of the duties arising from the common law bailment.

## COUNT III

### NEGLIGENCE PER SE

30.     The Plaintiffs incorporate by reference and restate the factual allegations in the preceding paragraphs.

31.     Defendants had a duty pursuant to the Graham-Leach-Bliley Act to protect and keep customer information confidential. For example, 15 U.S.C.A. § 6801 provides:

(a) Privacy obligation policy:

It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

(b) Financial institutions safeguards
In furtherance of the policy in subsection (a) of this section, each agency or authority described in section 6805(a) of this title shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards--
     (1) to insure the security and confidentiality of customer records and information;
     (2) to protect against any anticipated threats or hazards to the security or integrity of such records; and
     (3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

9

In addition to these requirements, 15 U.S.C.A. § 6809 also provides as follows:

(4) Nonpublic personal information

**(A)** The term "nonpublic personal information" means personally identifiable financial information--
**(i)** provided by a consumer to a financial institution;
**(ii)** resulting from any transaction with the consumer or any service performed for the consumer; or
**(iii)** otherwise obtained by the financial institution.
**(B)** Such term does not include publicly available information, as such term is defined by the regulations prescribed under section 6804 of this title.
**(C)** Notwithstanding subparagraph (B), such term--
**(i)** shall include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any nonpublic personal information other than publicly available information; but

32.     The Defendant Fifth Third Bank failed to comply with the requirements of

Section 6801 by not providing for adequate safeguards in its handling of nonpublic

personal information.

33.     Additionally, the Defendants were obligated to comply with credit card

industry regulations that prohibit, among other things, storage of unprotected credit

and/or debit card information.

34.     The failure to comply with Section 6801 and/or industry regulations with

respect to consumer credit and/or debit card transactions constitutes negligence *per se*.

35.     Plaintiffs and the class have been injured as a proximate result of these

breaches and Defendant's conduct constitutes negligence per se.

### Prayer for Relief

36.     Wherefore premises considered, the Plaintiffs, individually and on behalf

of the class, respectfully request that the Court enter an order:

10

(1)     requiring the defendants to make whole any losses suffered by the

plaintiffs and class as a result of their misconduct, including but not limited to the cost of

replacing cards and/or the losses attributable to fraudulent transactions connected to

and/or arising from the security breach;

(2)     enjoining the defendants from further actions which place the class at risk

of future security breaches and requiring them to comply with industry standards;

(3)     requiring the defendants to pay plaintiffs and class members a reasonable

attorney's fee and costs of litigation and;

(4)     providing for such other legal and/or equitable relief as the cause of justice

requires.

### Jury Demand

The Plaintiffs request a trial by struck jury.

Joe R. Whatley, Jr.
Andrew C. Allen
Richard P. Rouco
Patrick Sheehan

OF COUNSEL

Whatley Drake & Kallas,
28 State Street, 11th Floor
Boston, MA 02109
(617) 573-5118
(212) 447-7077 efax

Law Offices of Archie Lamb
Archie Lamb
Inge Johnstone
2017 Second Avenue North
Birmingham AL 35203
205-324-4644

11

Wood Law Firm, LLC
Kirk Wood
P.O. Box 382434
Birmingham AL 35238
205-612-0243

Rutland Law Firm, LLC
Louis Rutland
P.O. Box 551
Union Springs, AL 36089
334-738-4770

Greg Davis, LLC
6987 Halcyon Park Drive
Montgomery, AL 36117
(334) 832-9080

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

TJX COMPANIES, INC.
c/o CT Corporation System
101 Federal Street
Boston, MA 02110

TJ MAXX
c/o CT Corporation System
101 Federal Street
Boston, MA 02110

FIFTH THIRD BANCORP
c/o Paul L. Reynolds
39 Fountain Square Plaza
Cincinnati, Ohio 45263

FIFTH THIRD BANK
c/o Paul L. Reynolds
39 Fountain Square Plaza
Cincinnati, Ohio 45263

Exhibit F

# United States District Court
## District of Puerto Rico (San Juan)
## CIVIL DOCKET FOR CASE #: 3:07-cv-01075-FAB

Miranda et al v. TJX, Inc. et al
Assigned to: Judge Francisco A. Besosa
Demand: $300,000
Cause: 28:1332 Diversity-Other Contract

Date Filed: 01/26/2007
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Patricia Miranda**

represented by **Eric M. Quetglas-Jordan**
Quetglas Law Office
PO Box 16606
San Juan, PR 00908-6606
787-722-7745
Fax: 787-725-3970
Email: quetglaslaw@hotmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mary Robb Farley**

represented by **Eric M. Quetglas-Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marcela Jenkins**
*Individually And On Behalf Of A Class Similarly Persons*

represented by **Eric M. Quetglas-Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TJX, Inc.**

**Defendant**

**Fifth Third Bancorp**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/26/2007 | 1 | COMPLAINT against all defendants (Filing fee $ 350.), filed by all plaintiffs. (Attachments: # 1 Civil Cover Sheet Initial Documents# 2 Appendix Summons TJX# 3 Appendix Summons Bancorp)(Quetglas-Jordan, Eric) . (Entered: 01/31/2007) |
| 01/26/2007 | 2 | Summons Issued as to TJX, Inc., Fifth Third BancorpService due by 5/29/2007. (al, ) (Entered: 02/01/2007) |

| 02/02/2007 | 3 | ORDER OF RECUSAL. Signed by Judge Salvador E Casellas on 2/2/2007. (mdt, ) (Entered: 02/02/2007) |
| 02/05/2007 | 4 | Pursuant to the RECUSAL ORDER entered by Judge Salvador E. Casellas on February 2, 2007, dkt. #3, this case has been randomly reassigned within the Case Assignment System to Judge Francisco A. Besosa. All future pleadings shall bear the following initials next to the case number: CIVIL CASE NO. 07-1075 (FAB)Signed by Clerk on 02/05/07. (li, ) (Entered: 02/05/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/07/2007 12:40:04 | | |
| **PACER Login:** wp0011 | **Client Code:** | 3204 |
| **Description:** | Docket Report | **Search Criteria:** 3:07-cv-01075-FAB |
| **Billable Pages:** 1 | **Cost:** | 0.08 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| Patricia Miranda, Mary Robb Farley, and Marcela Jenkins Individually and on behalf of a class Similarly persons, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. _07 cv 01075 (SEC)_ |
| TJX, Inc., and Fifth Third Bancorp, | ) ) | |
| Defendants. | ) ) | |

### Class Action Complaint

The Plaintiffs, individually and on behalf of a class of similarly situated persons, complain against the Defendants as follows:

### Introduction

1.     Plaintiffs bring this action individually and on behalf of a class of similarly situated class members for injuries suffered as a result of Defendants' wrongful conduct.  In what has recently been described as potentially the largest retail security breach ever to have occurred in the United States, the Defendant TJX announced on January 17, 2007 that it had detected an unauthorized intrusion into its computer systems that process and store information related to customer transactions.  This intrusion involved portions of TJX's computer network that handles credit card, debit card, check and merchandise return transactions for customers of its T.J. Maxx, Marshalls, HomeGoods, Bob's Stores and A.J. Wright stores in the United States and Puerto Rico.  According to TJX's press release, the intrusion involved credit and debit card transactions occurring in 2003 and most recently for the period from mid-May through

December, 2006.   Additionally, what makes the intrusion into the TJX computer system particularly alarming is that the breach involved customer information such as drivers' license and checking accounts linked to transactions for returned merchandise and was not limited to credit and debit card information.

2.      This case arose because the Defendants have both statutory and common law duties to adequately protect their customers' non-public and private financial information.  The Defendants breached the duties owed to its customers by failing to maintain adequate computer data security.  Given the well-publicized breaches in 2005 involving CardSystems Solutions, the Defendants should have undertaken adequate measures to thwart and/or detect intrusions into their computer systems.

**Parties & Venue**

3.      The plaintiff Patricia Miranda is a resident of Puerto Rico.  She resides in Puerto Rico and is a customer of Marshalls.

4.      The plaintiff Mary Robb Farley is a resident of Puerto Rico.  She resides in Puerto Rico and is a customer of Marshalls.

5.      The plaintiff Marcela Jenkins is a resident of Puerto Rico.  She resides in Puerto Rico and is a customer of Marshalls.

6.      The defendant TJX, Inc. is incorporated in the State of Massachusetts.  TJX is an off price retailer of apparel and home fashions.  TJX regularly transacts business in the Puerto Rico.  It owns the Marshalls stores that operate in the District of Puerto Rico.

7.     The defendant Fifth Third Bancorp (hereinafter Fifth Third Bank) is charted in the State of Ohio.  Upon information and belief, Fifth Third Bank is the sponsoring bank that handled TJX's credit card accounts.

### Jurisdiction

8.     This Court has diversity jurisdiction over the claims asserted in the complaint in diversity pursuant to 28 U.S.C. Sec. 1332, and which are actionable under 31 L.P.R.A. §§ 3018 and 5141, et. seq. and 32 L.P.R.A. §3341 et seq. The amount in controversy exceeds $75,000 and there exists complete diversity with respect to the named parties.  Additionally, the Court has jurisdiction under the Class Action Fairness Act because this class has more than 100 hundred persons and the amount at issue exceeds five (5) million dollars.

### Factual Allegations

9.     The plaintiff Patricia Miranda holds is a Marshalls customer.  She made credit card transactions at Marshalls during the period that TJX announced its computer system had been compromised.

10.     The plaintiff Mary Robb Farley is a Marshalls customer.  She made credit card transactions at Marshalls during the period that TJX announced its computer system had been compromised.

11.     The plaintiff Marcela Jenkins is a Marshalls customer.  She made credit card transactions at Marshalls during the period that TJX announced its computer system had been compromised.

12.     On January 17, 2007, TJX announced that its computer system had been compromised and that the intrusion resulted in the theft of private financial data related

customer transactions. TJX further stated that it has identified customer information that has been stolen from its systems.

13.     Upon information and belief, Fifth Third Bancorp processed credit card and debit card transactions for TJX.   Fifth Third Bancorp served in the capacity as the acquiring bank (or the merchant acquirer).   As the merchant acquirer, Fifth Third Bancorp takes the credit card transactions from TJX and transmits them to the bank issuing the card.  Once the cardholder bank (the issuing bank) authorizes payment, Fifth Third Bancorp credits TJX's merchant account with the purchase price minus transactions fees.

14.     Although U.S. retailers who accept credit cards and the merchant acquirers are required to abide by card-industry regulations governing credit card transactions, many merchants don't comply with them. The rules that cover transactions on cards branded with logos from Visa, MasterCard International Inc., American Express Co. and Discover Financial Services, require merchants to validate a series of security measures, such as the establishment of firewalls to protect databases. Among other things, merchants are prohibited from storing unprotected cardholder information. According to the Wall Street Journal On-Line, Visa has reported that only 31% comply with card industry requirements.  Upon information and belief, TJX did not comply with card industry regulations and/or statutory requirements aimed at protecting privated financial information.   Upon information and belief, TJX maintained unprotected cardholder information on its computer system.

15.    Moreover, as member of the Visa and MasterCard networks, the Fifth Third Bancorp as the merchant acquirer was obligated to ensure that the TJX's computer system complied with statutory requirements and/or card industry regulations.

## Class Allegations

16.    Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated pursuant to Rule 23 of the *Federal Rules of Civil Procedure*. Plaintiffs seek certification of a class under Rule 23(b)(1), (b)(2) and (b)(3).

17.    Class definition: The class that Plaintiffs seek to represent is defined as all TJX customers who made credit card transactions at TJX's stores during the period that the security of Defendants computer systems were compromised and the privacy or security of whose credit card, check card, or debit card account, transaction or non-public information was compromised.

18.    Numerosity:    The class is composed of thousands of persons the joinder of which would be impracticable.  The individual identities of the individual members are ascertainable through Defendants' records or by public notice.

19.    Commonality: There is a well-defined community of interest in the questions of law and fact involved affecting the members of the class.  The questions of law and fact common to the class predominate over questions affect only individual class members, and include, but are not limited to, the following:

a.    Whether Defendants TJX and First Third Bank breached a duty and was negligent in failing to keep card members' account, transactions, and other non-public information secure;

b.       Whether all Defendants, or any of them, breached duties and was negligent in failing to inform directly or indirectly in a timely fashion card members (the security of whose accounts or other non-public information was compromised) of the occurrence of such a compromise of security;

c.       Whether the consumer class is entitled to notice as to whether the security of their credit card account or other non-public information was compromised as a result of a breach of security at TJX;

d.       Whether the consumer class is entitled to any other remedies such as ongoing credit monitoring, on account f the breach of duties of Defendants, or any of them;

e.       Whether the class is entitled to declaratory relief;

f.       Whether the class is entitled to injunctive relief; and,

g.       Whether the class is entitled to an award of reasonable attorneys' fees and costs of suit.

20.    Typlicality and Adequacy: Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class members they seek to represent and they are similarly situated with members of their class.  Plaintiffs will fairly and adequately represent and protect the interests of the class, and Plaintiffs' interests are not antagonistic to the class.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

21.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and class members' claims.  Plaintiffs and the members of the class have suffered irreparable harm as a result of Defendants unfair, deceptive and

unlawful conduct.  Because of the size of the individual class members' claims, few, if

any, class members could afford to seek legal redress for the wrongs complained of

herein.  Absent the class action, the members of the class will continue to suffer losses in

violations of law and wrongs described herein will continue without remedy.  Defendants

continue to deny wrongdoing and to engage in the unfair, unlawful, and deceptive

conduct that is the subject of this complaint.

## COUNT I

### NEGLIGENCE PER SE

22.    The Plaintiffs incorporate by reference and restate the factual allegations

in the preceding paragraphs.

23.    Defendants had a duty pursuant to the Graham-Leach-Bliley Act  to

protect and keep customer information confidential.  For example, 15 U.S.C.A. § 6801

provides:

(a) Privacy obligation policy:

It is the policy of the Congress that each financial institution has an affirmative and
continuing obligation to respect the privacy of its customers and to protect the security
and confidentiality of those customers' nonpublic personal information.

(b) Financial institutions safeguards
In furtherance of the policy in subsection (a) of this section, each agency or authority
described in section 6805(a) of this title shall establish appropriate standards for the
financial institutions subject to their jurisdiction relating to administrative, technical, and
physical safeguards--
    (1) to insure the security and confidentiality of customer records and
    information;
    (2) to protect against any anticipated threats or hazards to the security or
    integrity of such records; and
    (3) to protect against unauthorized access to or use of such records or
    information which could result in substantial harm or inconvenience to
    any customer.

In addition to these requirements, 15 U.S.C.A. § 6809 also provides as follows:

(4) Nonpublic personal information

**(A)** The term "nonpublic personal information" means personally identifiable financial information--
**(i)** provided by a consumer to a financial institution;
**(ii)** resulting from any transaction with the consumer or any service performed for the consumer; or
**(iii)** otherwise obtained by the financial institution.
**(B)** Such term does not include publicly available information, as such term is defined by the regulations prescribed under section 6804 of this title.
**(C)** Notwithstanding subparagraph (B), such term--
**(i)** shall include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any nonpublic personal information other than publicly available information; but

24.     The Defendant Fifth Third Bancorp failed to comply with the

requirements of Section 6801 by not providing for adequate safeguards.

25.     Additionally, the Defendants were obligated to comply with credit card

industry regulations that prohibit, among other things, storage of unprotected credit card

information.

26.     The failure to comply with Section 6801 and/or industry regulations with

respect to plaintiffs and class members credit card transactions constitutes negligence *per*

*se.*

27.     Plaintiffs and the class have been injured as a proximate result of these

breaches and Defendant's conduct constitutes negligence per se.

## COUNT II

### (Negligence)

28.     The Plaintiffs incorporate by reference and restate the factual allegations

in the preceding paragraphs.

29.     The Defendants came into possession of private financial information and had a duty to adequately protect it from theft.  The Defendants did not exercise reasonable care in safeguarding such information.

30.     Plaintiffs and the class have been injured as a proximate result of these breaches and Defendants' conduct constitutes negligence.

## COUNT III

### (Common Law Bailment)

31.     The Plaintiffs incorporate by reference and restate the factual allegations in the preceding paragraphs.

32.     The private financial information, including credit card numbers, constitute plaintiffs and class members personal property.

33.     The plaintiffs and class members entrusted such personal property to the defendants.

34.     As bailees, the defendants had an obligation to adequately protect the personal property entrusted from theft, unauthorized disclosure and/or other conduct that might compromise such property.

35.     The defendants breached the duties arising from the bailment by failing to adequately protect the plaintiffs and class members personal property (i.e. financial information).

36.     Plaintiffs and the class have been injured as a proximate result of these breaches and Defendants' conduct constitutes a breach of the duties arising from the common law bailment.

## COUNT IV

### (Breach of Contract)

37.     The Plaintiffs incorporate by reference and restate the factual allegations in the preceding paragraphs.

38.     The plaintiffs, class members and defendants were parties to a contract that required the defendants to adequately protect credit card, debit card and other personal information from theft or unauthorized disclosure.

39.     Alternatively, the plaintiffs and class members were third party beneficiaries to contracts and/or agreements that the defendants entered into with card issuing banks and/or credit card associations/networks.  These agreements required the defendants to adequately safeguard credit card, debit card and/or other personal information from theft or unauthorized disclosure.

40.     The defendants breached their agreements with the plaintiffs, class members and/or other financial institution or associations by failing to adequate safeguard plaintiffs and class members private financial information.

41.     Plaintiffs and the class have been injured as a proximate result of these breaches and Defendants' conduct constitutes a breach of the duties arising from the common law bailment.

### Prayer for Relief

42.     Wherefore premises considered, the Plaintiffs, individually and on behalf of the class, respectfully request that the Court enter an order:

(1)     requiring the defendants to make whole any losses suffered by the plaintiffs and class as a result of their misconduct;

(2)   requiring the defendants to compensate plaintiffs and/or provide monies needed to monitor the plaintiffs and class members financial accounts;

(3)   enjoining the defendants from further actions which place the consuming class at risk of future security breaches;

(4)   requiring the defendants to pay plaintiffs and class members a reasonable attorney's fee and costs of litigation and;

(5)   providing for such other legal and/or equitable relief as the cause of justice requires.

**Jury Demand**

The Plaintiffs request a trial by jury.

/S/     Eric M. Quetglas Jordan
ERIC M. QUETGLAS JORDAN
USDC-PR #202514
JOSE F. QUETGLAS
USDC-PR #203411
QUETGLAS LAW OFFICES
PO Box 16606
San Juan, Puerto Rico 00908
Tel: 787.722.0635/787.722.7745
Fax: 787.725.3970
Email: quetglaslaw@hotmail.com

E. Kirk Wood
E. KIRK WOOD, ESQ.
P.O. BOX 382434
Birmingham, Alabama 35238
2017 Second Avenue North
Suite 200A
Birmingham, Alabama 35201
Tel: 205.612.0243
Fax: 205.408.2517
ekrikwood1@cs.com

**ATTORNEYS FOR PLAINTIFFS**